IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| for the use and benefit of | : | |
| STROMBERG METAL WORKS, INC. | : | |
| | : | |
| v. | : | CIVIL NO. L-02-3188 |
| | : | |
| BELL BCI COMPANY, et al. | : | |

**MEMORANDUM**

Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, to Stay this Action Pending the Exhaustion of Mandatory Disputes Procedures, and Plaintiff's Motion for Leave of Court to Serve Discovery Upon Defendant, Bell BCI Company. The issues have been fully briefed by the parties, and no oral argument is necessary. See Local Rule 105.6 (D. Md. 2001). For the reasons set forth below, the Court will, by separate Order: (i) DENY Defendants' motion as it pertains to Count I of Plaintiff's Complaint; (ii) DENY Defendants' motion as it pertains to Count II of Plaintiff's Complaint, without prejudice to refiling at the close of discovery; and (iii) DENY AS MOOT Plaintiff's motion.

**I.     Background**

   **A.     Facts**

Plaintiff Stromberg Metal Works, Inc. ("Plaintiff") brought this action under the Miller Act, 40 U.S.C. § 270a, *et seq.*, to recover approximately $1.7 million for work Plaintiff performed on a federal government construction project located in Bethesda, Maryland. Defendant BELL BCI Company ("BELL"), the general contractor for the project, entered into a subcontract with Plaintiff whereby

Plaintiff was to perform the fabrication and installation of the mechanical HVAC sheet metal ductwork for the project. (Compl. ¶¶ 4-7, 20, 26.)

Plaintiff alleges that BELL has not paid it for labor, materials and services that it provided to the project, and that the current amount due and owing is $1,756,730. (Compl. ¶¶ 18, 24.) Plaintiff, therefore, filed this action against BELL and against United States Fidelity & Guaranty Company ("USF&G"), the surety on a labor and material payment bond that defendant BELL provided for the project pursuant to the Miller Act, 40 U.S.C. § 270a. (Compl. ¶ 3.) The bond guarantees payment for labor and materials provided by subcontractors and suppliers for the project. (Compl. ¶ 6.)

Count 1 of Plaintiff's Complaint is against both BELL and USF&G and alleges that, pursuant to the Miller Act, the defendants are liable to Plaintiff under the labor and material payment bond. Count II is an alternative claim against BELL only and alleges that BELL breached the subcontract by failing to pay Plaintiff for work it performed for the project.

  **B.** **Pending Motions**

    **1.** **Defendants' Motion**

Defendants moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss, or in the alternative to stay, this action on the ground that Plaintiff failed to exhaust contractually-imposed disputes resolution procedures. Defendants claim that the damages Plaintiff seeks to recover in this action are the subject of an ongoing disputes resolution process in which BELL and the government are currently engaged. Defendants contend that this Court, therefore, should dismiss this action, or in the alternative, stay this action until that disputes resolution process is completed.

The disputes resolution process is, apparently, described in BELL's general contract with the government. According to Defendants, the general contract contains the Federal Acquisition Regulations ("FAR") dispute clause, which states that "claims for additional compensation and/or delay must be certified and then submitted to the Contracting Officer whose 'decision shall be final unless [BELL] appeals or files suit as provided in the [Contract Disputes] Act.'" (Defs. Mem. Supp. Mot. Dismiss at 3, quoting FAR Section 52.233-1(d) and (f).)[1]

Defendants state that in March 2002, Plaintiff provided BELL with a Certified Claim in the amount of $1,689,912, which Plaintiff authorized BELL to submit to the government for payment. In July 2002, the Contracting Office denied Plaintiff's claim, as well as other claims BELL had submitted. According to Defendants, BELL is currently negotiating with the government to resolve those claims and, if the negotiations fail, BELL will seek judicial review in the United States Court of Federal Claims in accordance with the disputes clause of the general contract, FAR Section 52.233-1(f), and the Contract Disputes Act, 41 U.S.C. § 601, *et seq.*

Defendants cite to various provisions in BELL's subcontract with Plaintiff to support their argument that, before pursuing this action, Plaintiff is required to exhaust the general contract's disputes resolution procedures, and, therefore, await the conclusion of BELL's negotiations with, or litigation against, the government. First, Defendants contend that BELL's subcontract with Plaintiff incorporates the general contract, including the disputes procedures contained therein. Specifically, Defendants cite paragraph 1 of the subcontract, which states: "[I]n so far as the provisions of said contract documents

---

[1] Defendants have not provided the Court with the general contract that Defendants claim contains this disputes clause.

are applicable to this agreement they are hereby made a part hereof." (Defs. Mem. Supp. Mot. Dismiss, Ex. A, ¶ 1.)

Second, Defendants cite various provisions of paragraph 1 of the subcontract that discuss Plaintiff's obligations and responsibilities. Paragraph 1 of the subcontract provides that Plaintiff assumes toward BELL "all obligations and responsibilities that [BELL], by those said contract documents assume toward the [government]," and that BELL "shall have the same rights and remedies against [Plaintiff] in respect to all such obligations and liabilities as the [government] has against [BELL] with the same force and effect as if every such obligation, liability, right and remedy were set forth herein in full." (Defs. Mem. Supp. Mot. Dismiss, Ex. A, ¶ 1.)

Third, Defendants refer the Court to paragraphs 10 and 19 of the subcontract, which provide, respectively, that "[n]o claim shall be made for extra work or materials, . . . unless and to the extent that the Contractor recovers the same from the [government]," and that "[s]ubcontractor expressly agrees that its sole right and remedy in the case of any delay, obstruction or hindrance shall be an extension of the time fixed for completion of work unless and to the extent that the Contractor recovers the same from the [government]." (Defs. Mem. Supp. Mot. Dismiss, Ex. A, ¶¶ 10, 19.) Defendants argue that, by virtue of paragraphs 10 and 19 of the subcontract, Plaintiff agreed that its right to recover against BELL and its surety, USF&G, would be limited "to the extent that [BELL] recovers the same from the [government]." (Defs. Mem. Supp. Mot. Dismiss at 5.)

Plaintiff argues the following three points in opposition to Defendants' motion: (1) Plaintiff's subcontract with BELL does not contain any requirement that Plaintiff exhaust administrative remedies or disputes procedures; (2) BELL and the government have already settled the bulk of Plaintiff's claim,

4

BELL has released the government from any and all liability with regard to that claim, and there is, therefore, no ongoing disputes resolution process; and (3) Plaintiff's surety bond claim may proceed under the Miller Act regardless of any contractually imposed disputes resolution procedures and regardless of whether BELL has received payment from the government.

### 2. Plaintiff's Motion

After the parties completed briefing Defendants' motion, Plaintiff filed a Motion for Leave of Court to Serve Discovery upon Defendant, BELL BCI Company. Because of the pending motion to dismiss, the Court has not yet issued a scheduling order, and discovery, therefore, has not yet commenced. Plaintiff states in its motion that it would like to initiate discovery regarding BELL's settlement of claims with the government to determine if, and to what extent, Plaintiff's claims were included in the settlement. Plaintiff argues that such discovery is germane to the resolution of the outstanding motion to dismiss.

## II. Standard of Review

Ordinarily, a complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of its claim that entitle it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995). The liberal pleading requirements of Rule 8(a) demand only a "short and plain" statement of the claim. In evaluating such a claim, the Court must accept as true all well-pleaded allegations of fact and view them in the light most favorable to the plaintiff. See Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969). In essence, the legal theory articulated, or even suggested, by the non-moving party must be one that could not be the basis for a

ruling in that party's favor.

### III.    Analysis

#### A.    Defendants' Motion to Dismiss

##### 1.    Count I - The Miller Act

The Miller Act "protects those who furnish labor or material for substantial federal . . . contracts from defaults in payment by compelling the party awarded the government contract (the 'contractor') to post a payment bond against which the suppliers of labor or materials may claim in the event of such a default." United States ex rel. Global Bldg. Supply, Inc. v. WNH Ltd. P'ship, 995 F.2d 515, 517-18 (4th Cir. 1993) (citing 40 U.S.C. §§ 270a(a)(2), 270b(a)).  A subcontractor that has furnished labor or materials for such a project and has not been paid in full within ninety days after performance has the right to sue on the payment bond for the amount unpaid at the time the suit is commenced, and to "prosecute said action to final execution and judgment for the sum or sums justly due him." See 40 U.S.C. § 270b(a).

Defendants ask this Court to prohibit Plaintiff from exercising its right to sue and prosecute this action under the Miller Act until the conclusion of the disputes resolution process in which, according to Defendants, BELL and the government are currently engaged.  Filing suit against Defendants under the Miller Act, however, is Plaintiff's only remedy for nonpayment; the government owes Plaintiff no obligation for the work Plaintiff performed.  See United States ex rel. B's Co. v. Cleveland Elec. Co., 373 F.2d 585, 588 (4th Cir. 1967).  Accordingly, in order for this Court to restrict Plaintiff's right to prosecute its Miller Act claim, the subcontract between Plaintiff and BELL must contain "clear and express" language waiving Plaintiff's right to sue under the Act.  See id. ("[T]his right to sue may be

6

waived by clear and express provisions in the contract between the prime contractor and the subcontractor.").

The subcontract between Plaintiff and BELL does not contain "clear and express" language waiving Plaintiff's right to sue under the Miller Act, and the Court, therefore, will not dismiss or stay the prosecution of Plaintiff's Miller Act claim. Although Defendants contend that BELL's subcontract with Plaintiff incorporates the general contract, including the disputes resolution procedures contained therein, the subcontract's incorporation clause incorporates only the provisions of the general contract that are "applicable to" the subcontract. (Defs. Mem. Supp. Mot. Dismiss, Ex. A, ¶ 1; see supra at 3.) The subcontract, therefore, does not incorporate the entire general contract, and Defendants fail to discuss how the disputes procedures in the general contract are "applicable to," and thereby incorporated into, the subcontract. Moreover, the subcontract does not mention the Miller Act or the general contract's disputes resolution process. Accordingly, the incorporation language in the subcontract does not waive Plaintiff's Miller Act rights. See United States ex rel. DDC Interiors, Inc. v. Dawson Constr. Co., 895 F. Supp. 270, 273-74 (D. Colo. 1995) (concluding that "incorporation language in the subcontract does not effect waiver of [the plaintiff's] Miller Act rights" when the subcontract does not mention the Miller Act or the general contract's disputes clause, and stating that "such a 'drastic curtailment' of a subcontractor's rights will not be read into a general agreement by the subcontractor to be bound by the terms of the prime contract"), aff'd, 82 F.3d 427 (10th Cir. 1996).

Likewise, the language in paragraph 1 of the subcontract that provides that Plaintiff assumes toward BELL the obligations and responsibilities that BELL assumes toward the government, and that BELL has the same rights and remedies against Plaintiff as the government has against BELL, is

insufficient to waive Plaintiff's right to pursue its Miller Act claim.  Such language does not address Plaintiff's rights against BELL or its surety, USF&G, and it does not discuss the Miller Act or any disputes resolution procedures.  See id. at 273.

In addition, paragraphs 10 and 19 of the subcontract do not waive Plaintiff's Miller Act rights. Paragraph 10 provides that "[n]o claim shall be made for extra work or materials, . . . unless and to the extent that the Contractor recovers the same from the [government]," and paragraph 19 states that Plaintiff "expressly agrees that its sole right and remedy in the case of any delay, obstruction or hindrance shall be an extension of the time fixed for completion of work unless and to the extent that the Contractor recovers the same from the [government]."  (Defs. Mem. Supp. Mot. Dismiss, Ex. A, ¶¶ 10, 19.)  Although "pay upon payment" clauses may imply a waiver of a subcontractor's rights under the Miller Act, "[c]ircumvention of the Miller Act . . . cannot rest on mere implication," and any waiver must be "definite, clear, explicit, and unmistakable."  Dawson Constr. Co., 895 F. Supp. at 274; see also Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 723-24 (4th Cir. 2000) (concluding that surety "may not assert the 'pay when paid' clause contained in subcontract between the claimants and the principal as a defense to its liability to pay on the bond").  Paragraph 10 does not specify to what "claims" it is referring, and it states absolutely nothing about Plaintiff's right to file a lawsuit for payment on the bond.  Moreover, paragraph 19 discusses an extension of time for completion of work, not recovering payment for work performed, which is what Plaintiff is seeking in this lawsuit.  Accordingly, the language in paragraphs 10 and 19 does not "clearly and expressly" waive Plaintiff's Miller Act rights.

To counter Plaintiff's argument that it may pursue its Miller Act claim, Defendants cite United

States ex rel. R. Rudnick & Co. v. Daniel, Urbahn, Seelye & Fuller, 357 F. Supp. 853 (N.D. Ill. 1973), as requiring courts to stay Miller Act claims when the subcontract incorporates the disputes provision of the prime contract.  Defendants, however, have misinterpreted the case.  The court in R. Rudnick stayed the case because the disputes clause was "explicitly set out in the subcontract itself, not incorporated therein by reference to the prime contract."  Id. at 861.  Defendants have not pointed to, and the Court has not found, any disputes resolution procedures in the subcontract itself.  The R. Rudnick case, therefore, does not support Defendant's position.

Accordingly, the Court finds that Plaintiff's subcontract with BELL does not contain any "clear and express" provisions waiving Plaintiff's Miller Act rights.  In addition, the fact that BELL may be negotiating with the government to settle Plaintiff's claim does not affect Plaintiff's right to pursue its Miller Act claim at this time.  See Fanderlik-Locke Co. v. United States ex rel. M.B. Morgan, 285 F.2d 939, 942 (10th Cir. 1960) ( "[O]rdinarily the fact that a prime contractor has a claim for the same amounts pending under the 'disputes clause' of the prime contract, does not affect Miller Act cases.").  The Court, therefore, will DENY Defendants' motion as it pertains to Count I of Plaintiff's Complaint.

### 2. Count II - Breach of Contract

As an alternative to its Miller Act claim, Plaintiff alleges that BELL breached the subcontract by not paying Plaintiff for the work it performed on the project.  Plaintiff's Miller Act claim is proceeding, and discovery regarding that claim will focus on the same facts and circumstances encompassed by the breach of contract claim.  At this time, therefore, deciding Defendants' motion with respect to Plaintiff's breach of contract claim would not conserve resources.

Furthermore, the parties dispute to what extent BELL and the government have already settled

Plaintiff's claim and whether BELL, therefore, has any available recourse against the government pursuant to the disputes resolution process. Discovery has not yet commenced in this action, and, therefore, at this stage, the record is insufficient regarding that issue.

Accordingly, the Court will DENY Defendants' motion as it pertains to Count II of Plaintiff's Complaint, without prejudice to refiling at the close of discovery.

### B. Plaintiff's Motion to Conduct Discovery

Plaintiff seeks leave of Court to serve discovery on Defendant that Plaintiff deems germane to the Court's resolution of Defendants' motion to dismiss, or in the alternative, to stay this action. The Court has addressed Defendants' motion in this Memorandum and will soon issue a scheduling order and permit discovery to commence. Accordingly, the Court DENIES Plaintiff's motion as MOOT.

## IV. Conclusion

For the foregoing reasons, the Court will, by separate Order: (i) DENY Defendants' motion as it pertains to Count I of Plaintiff's Complaint; (ii) DENY Defendants' motion as it pertains to Count II of Plaintiff's Complaint, without prejudice to refiling at the close of discovery; and (iii) DENY AS MOOT Plaintiff's motion.

Dated this 23rd day of June, 2003.

_____/s/_____
Benson Everett Legg
Chief Judge