UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION AT GREENBELT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA *for the use and benefit of* STROMBERG METAL WORKS, INC. | ) ) ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | Civil Action No. L 02 CV 3188 |
| BELL BCI COMPANY, *et al.*, | ) ) ) | |
| Defendant/Counter-Plaintiff. | ) ) | |

**BELL BCI COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

Pursuant to Fed.R.Civ.P. Rule 37 and Local Rule 104, BELL BCI Company ("BELL") respectfully submits this Opposition to the Motion to Compel filed by the plaintiff, Stromberg Metal Works, Inc. ("Stromberg" or "Plaintiff") (hereinafter referred to as "Stromberg's Motion").

**I.     SUMMARY**

BELL was the general contractor on a large, multi-year construction project for the federal government.  Stromberg was only one of many subcontractors to BELL on the project. Stromberg, however, literally demands that BELL be compelled to produce every single document "related in any manner whatsoever to the Project," regardless of who prepared the document, regardless of when the document was prepared, regardless of whether the document has any relationship whatsoever to the limited scope of subcontract work that it performed, and regardless of whether the document bears on Stromberg's breach of subcontract claim.

BELL has <u>not</u> objected to producing documents and providing information relevant to Stromberg's alleged breach of subcontract claim. BELL repeatedly asked Stromberg to narrow its requests, but Stromberg refused. Stromberg's discovery demands are the quintessential "fishing expedition" and are not reasonably calculated to lead to the discovery of admissible evidence. There are no allegations in Stromberg's Complaint that support its demand for totally unfettered discovery. To the contrary, Stromberg has expressly alleged an "ordinary" breach of subcontract. Merely because Stromberg was a subcontractor on the project does not entitle it to receive, literally, every scrap of paper "related in any manner whatsoever to the project." Accordingly, Stromberg's Motion should be denied.

BELL also strenuously objects to the flagrantly misleading assertions in Stromberg's Motion that BELL has "failed to produce" documents. <u>Before</u> Stromberg filed its Motion, BELL agreed to produce documents relevant to Stromberg's claims for alleged breach of the Subcontract. Indeed, BELL previously agreed to produce the Project schedules for the construction, change orders, delay claims asserted by BELL and other subcontractors against the Government, and documents involving Stromberg and its scope of work on the Project. To date, neither party has produced any documents. Thus, BELL has no more "failed to produce" documents than Stromberg. There is no good faith basis for Stromberg's Motion to repeatedly assert that BELL has refused or "failed" to produce any documents.

## II. BACKGROUND

### A. OVERVIEW OF THE PROJECT

This action involves a contract dispute between a subcontractor, Stromberg, and the general contractor, BELL, arising out of a portion of the work that Stromberg performed in connection with a construction project for the United States of America (the "Government"). In

or about March 1998, BELL entered into a contract with the Government pursuant to which BELL acted as the general contractor for the construction of laboratory facilities at the National Institutes of Health in Bethesda, Maryland known as Building 50 (hereinafter referred to as the "Project"). (*See* Complaint, ¶ 6).

The Project was very large. The amount of BELL's contract with the Government was in excess of $85,000,000. BELL retained dozens of subcontractors to perform discrete parts of the work. Work on the Project was substantially completed in or about 2002.

### B.   STROMBERG'S SUBCONTRACT WITH BELL AND ITS CLAIMS IN THIS ACTION

On April 24, 1998, BELL and Stromberg entered into a written lump sum subcontract (the "Subcontract") pursuant to which "Stromberg was to perform the fabrication and installation of mechanical HVAC sheet metal ductwork for the Project…" (*See* Complaint, ¶ 7). A copy of the Subcontract was appended as Exhibit B to Stromberg's Complaint. Stromberg was to be paid $3,670,000 for properly completing its base work under the Subcontract. (*See* Subcontract, ¶ 3 at p. 2, Exhibit B to Complaint).

Stromberg alleged that its breach of contract claim against BELL is "based on BELL['s] <u>ordinary</u> and material <u>breaches of Stromberg's Subcontract</u>." (*See* Complaint, Count II, ¶ 22 at p. 4) (emphasis added). The only allegations that Stromberg made in support of its "ordinary" breach of subcontract claim against BELL are that Stromberg "<u>performed all work required by its Subcontract</u> and the directives of BELL" and that it is owed "$1,756,730.00 for <u>subcontract work performed</u>, including change work and extra work." (*Id.*, Count II, ¶¶ 23-24 at p. 5) (emphasis added). The foregoing constitute the entirety of the material allegations in support of Stromberg's breach of Subcontract claim against BELL.

3

Interrogatory No. 4 of BELL's First Set of Interrogatories to Stromberg asked Stromberg to identify the components its damages claims against BELL. In its Answer to Interrogatory No. 4, Stromberg alleged, *inter alia*, that any purported delay and impact costs it incurred ceased as of "10/5/01," *i.e.*, October 5, 2001. (*See* Ex. 1 hereto, Stromberg's Answer to Interrogatory No. 4).

**C.    DOCUMENT REQUESTS IN DISPUTE**

Stromberg has served BELL with two (2) sets of Requests for Admission; one (1) set of Interrogatories; and a Request for Production of Documents. Pursuant to the Court's Order of August 18, 2003, Stromberg also has the right to take up to thirty (30) hours of depositions.

Stromberg's Motion seeks to compel BELL to produce all documents responsive to four (4) requests. Stromberg's requests and BELL's objections thereto are as follows:

**(i)    STROMBERG'S DOCUMENT REQUEST NO. 3**

"Any and *all* correspondence, written communication, e-mails, statements, and/or other *documents relating in any manner to the Project, whether addressed to, received by, or generated by Bell, USF&G, the Owner, the Architect and/or* any other person or entity that had any involvement whatsoever with the Project." (underline in original; italics added).

**BELL'S OBJECTIONS TO DOCUMENT REQUEST NO. 3**

"BELL objects to this request on the grounds that it is grossly over broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. This request demands that BELL produce 'Any and all…document relating in any manner to the Project…generated by BELL, USF&G, the Owner, the Architect and/or any other person or entity that had any involvement whatsoever with the Project' (emphasis in original). This is a blatant 'fishing' expedition type of request. There is no allegation in the Complaint, nor could there be under Fed.R.Civ.P. Rule 11, that 'any and all documents' generated by any 'person or entity that had any involvement whatsoever with the Project' are relevant to an alleged breach of contract."

**(ii)    STROMBERG'S DOCUMENT REQUEST NO. 4**

"*All internal memoranda*, other *internal communications* (including, but not limited to e-mails), meeting minutes, diaries, calendars, and *personal notes that were generated by, or transmitted to, any person employed by Bell that relate in any manner to the Project*." (emphasis added).

4

**BELL'S OBJECTIONS TO DOCUMENT REQUEST NO. 4**

"BELL objects to this request on the grounds that it is grossly over broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Again, Stromberg was but one of many subcontractors on the Project. Assuming *arguendo* that BELL has documents reflecting 'internal communications,' to the extent that such documents do not deal with Stromberg and its work on the Project, such documents are irrelevant."

(iii)   **STROMBERG'S DOCUMENT REQUEST NO. 6**

"Any and *all documents relating in any manner to the original and any revised budgets, bids, and/or estimates for the Project, whether prepared by Bell or prepared by other persons or entities on behalf of Bell including, but not limited to, any questions, worksheets, tabulations, or other summaries or documents of any kind.*"   (emphasis added).

**BELL'S OBJECTIONS TO DOCUMENT REQUEST NO. 6**

"BELL objects to this request on the grounds that it is grossly over broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Again, Stromberg was but one of many subcontractors on the Project. Documents relating to scopes of work and matters not covered by Stromberg's subcontract with BELL have no relationship to any issue in dispute in this case."

(iv)   **STROMBERG'S DOCUMENT REQUEST NO. 7**

"Any and all photographs, videotapes, audiotapes, progress meeting and other meeting minutes, diaries, logs, memoranda, punchlists, inspection reports, daily reports, correspondence, statements, other reports or notes, and/or *any other document relating in any manner to the design or construction of the Project, including such documents prepared by Bell and/or prepared by any other person or entity*, including but not limited to, Bell's project management team, onsite representatives, consultants, inspectors, agents, the Owner, architect, and/or any engineers."   (emphasis added).

**BELL'S OBJECTIONS TO DOCUMENT REQUEST NO. 7**

"BELL objects to this request on the grounds that it is grossly over broad, burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. BELL further objects on the ground that is request is duplicative of other requests. Again, Stromberg was but one of many subcontractors on the Project. There is no allegation in the Complaint regarding the design of the Project, or the construction of the Project other than construction work performed by Stromberg."

In short, Stromberg demands that BELL be compelled to produce <u>all</u> "documents relating in any manner to the Project," including "documents relating in any manner to the design or construction of the Project, including such documents prepared by Bell and/or prepared by any other person or entity…" (*See* Stromberg's Motion at pp. 1 and 3, Request Nos. 3 and 7).

### III.   STROMBERG'S DOCUMENT REQUEST NOS. 3, 4, 6 AND 7 ARE OVERBROAD AND BURDENSOME

Pursuant to Fed.R.Civ.P. Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…" Whereas Rule 26(b)(1) expressly limits discovery to matters "relevant to the claim…of any party," Stromberg asserts that the scope of discovery is not confined to its "claim" but rather, extends to anything and everything "relating in any manner to the Project." (*See* Stromberg's Motion at p. 1, quoting Stromberg's Request No. 3). Contrary to Rule 26(b)(1), Stromberg wrongly uses the "Project" as the measuring stick for the scope of relevant discovery, rather than its "claim."

#### A.   STROMBERG'S DOCUMENT REQUEST NO. 3

Pursuant to Document Request No. 3, Stromberg claims entitlement to every single document "relating in any manner to the Project, whether addressed to, received by, or generated by BELL…<u>or any other person or entity that had any involvement whatsoever with the Project</u>." (*See* Stromberg's Motion at p. 1, citing Stromberg's Request No. 3 (emphasis in original)).[1] In short, Stromberg's Document Request No. 3 demands that BELL produce, literally, every scrap of paper, from whatever source, "relating in any manner to the Project," even if the subject matter of the document has nothing to do with Stromberg's claim for breach of the Subcontract.

---

[1] Stromberg's other document requests, though subsumed by Stromberg's Document Request No. 3, are similarly unlimited in scope. (*See* Stromberg's Motion at p. 2, quoting Document Request No. 4's demand to produce "[a]ll…other internal communications…that relate in any manner to the Project;" and at p. 3 quoting Document Request No. 6's demand to produce "[a]ll documents relating in any manner to the original and any revised budgets, bids and/or estimates for the Project…," and Document Request No. 7's demand to produce "[a]ll…document[s] relating in any manner to the design or construction of the Project…").

6

Stromberg's Motion asserts that Document Request No. 3 "is intended to permit Stromberg to discover the communications…for additional compensation for extra work performed and delays encountered as a result of changes in the scope of work to the project." (*See* Stromberg's Motion at p. 2). Stromberg's assertion is unfounded.

Stromberg's Complaint is limited to an alleged breach of its Subcontract with BELL. (*See* Stromberg's Complaint, ¶¶ 22-25). There is no allegation in the Complaint that purports to extend to every issue "relating in any manner to the Project." As noted above, Rule 26(b)(1) expressly states that the permissible scope of discovery is measured by "the claim…of any party…" Stromberg cannot unilaterally expand the breadth of Rule 26(b)(1) to embrace "anything relating to the Project" because its actual "claim" is of a much narrower scope.

Furthermore, BELL already agreed to produce the Project schedules for the construction, change orders, delay claims asserted by BELL and other subcontractors against the Government, and documents involving Stromberg and its scope of work on the Project. As noted above, BELL strenuously objects to Stromberg's failure to advise the Court of BELL's agreement to produce documents and to the insinuation in Stromberg's Motion that BELL has refused to produce any documents.

Stromberg's Request No. 3 is a demand for discovery that is not limited by the scope of Stromberg's claim in this case. Rule 26(b)(1) does not entitle Stromberg to such limitless discovery. BELL should not be have to endure the time, expense and burden of determining and producing the universe of documents that could "relate in any manner to the Project." Request No. 3 is so limitless that virtually any document in BELL's possession could be deemed, in some sense, to "relate" in some manner to the Project. Therefore, Stromberg's Motion to Compel BELL to produce all documents demanded in Request No. 3 should be denied.

7

  **B.**  **S<small>TROMBERG'S</small> D<small>OCUMENT</small> R<small>EQUEST</small> N<small>O</small>. 4**

  Pursuant to Document Request No. 4, Stromberg asserts that it is entitled to production of "all internal communications…that relate in any manner to the Project," because such documents purportedly could "have a direct bearing on the issues raised in this matter," and that because such "documents may reveal how Bell treated its subcontractors…" (*See* Stromberg's Motion at p. 2). Stromberg's assertions are utterly conclusory and quickly refuted.

  Again, Stromberg has claimed breach of <u>its</u> Subcontract with BELL. There is <u>no</u> allegation in Stromberg's Complaint about how BELL allegedly "treated" other subcontractors. Simply put, Stromberg demands discovery about an issue that it has not even raised in its Complaint. By definition such discovery is not permissible. *See* Rule 26(b)(1).

  **C.**  **S<small>TROMBERG'S</small> D<small>OCUMENT</small> R<small>EQUEST</small> N<small>O</small>. 6**

  Pursuant to Document Request No. 6, Stromberg contends that it is entitled to "[a]ll documents relating in any manner to the original and any revised budgets, bids and/or estimates for the Project," because such documents demanded could "demonstrate what work BELL anticipated performing and the manner in which the work would be performed." (*See* Stromberg's Motion at p. 3). Once again, Stromberg's demand is wholly untethered from Stromberg's claim for breach of the Subcontract.

  Stromberg's and BELL's rights and obligations will be determined by their Subcontract, not by Stromberg's speculation about "what work BELL anticipated performing and the manner in which the work would be performed." Obviously, BELL "anticipated" that Stromberg would perform the sheetmetal work as expressly set forth in the Subcontract. BELL's budgets and estimates for work it either self-performed or had performed by other subcontractors have no relevance to Stromberg's claim for breach of the Subcontract. There is <u>no</u> allegation in

8

Stromberg's Complaint about work that BELL self-performed or that was performed by subcontractors other than Stromberg.

Stromberg also makes the novel assertion that mitigation or lack thereof might be shown by having BELL produce the requested documents. (*See* Stromberg's Motion at p. 3). To be blunt, that argument is specious. The duty to mitigate rests solely with Stromberg as the party claiming breach of the Subcontract, not with BELL. Documents in BELL's possession will not reflect what steps, if any, Stromberg took to mitigate its alleged damages. Discovery must be reasonably calculated to lead to discovery of admissible evidence <u>in this case</u>. Estimates for work that Stromberg did not perform have no relevance to Stromberg's claim for breach of the Subcontract.

### D.   STROMBERG'S DOCUMENT REQUEST NO. 7

Finally, pursuant to Document Request No. 7, Stromberg demands that BELL produce "[a]ll…document[s] relating in any manner to the design or construction of the Project, including such documents prepared by Bell and/or prepared by any other person or entity…" (*See* Stromberg's Motion at p. 3). This request is merely a slight variation of Stromberg's Request No. 3 and it fails for the reasons discussed above, *i.e.*, it demands documents that have nothing to do with Stromberg's claim for breach of the Subcontract.

## IV.   CONCLUSION

To reiterate, <u>before</u> Stromberg filed its Motion, BELL agreed to produce documents relevant to Stromberg's claims for alleged breach of the Subcontract. In short, BELL previously agreed to produce relevant documents responsive to Stromberg's requests.

Under Rule 26(b)(1), the relevant touchstone is Stromberg's "claim," not the "Project." Not every document "relating in manner to the design or construction of the Project" that was

9

prepared or received by "any person or entity" is relevant to Stromberg's claim for breach of the Subcontract. Stromberg's blanket demand for every such document is unfounded and unsupported by the claim alleged in its Complaint.

Stromberg's requests are a classic example of the type of "fishing expedition" that is not allowed under Rule 26(b)(1). Therefore, Stromberg's Motion should be denied.

>Respectfully submitted,
>
>BELL BCI COMPANY
>
>By counsel:
>
>  /s/  Richard O. Wolf
>Richard O. Wolf   (FBN 04989)
>MOORE & LEE, LLP
>1750 Tysons Boulevard, Suite 1450
>McLean, Virginia  22102-4225
>Telephone:  (703) 506-2050
>Facsimile:  (703) 506-2051
>E-Mail:  r.wolf@mooreandlee.com

Dated: October 23, 2003

Of Counsel:

Charlie C.H. Lee
MOORE & LEE, LLP
1750 Tysons Boulevard, Suite 1450
McLean, Virginia  22102-4225
Telephone:  (703) 506-2050
Facsimile:  (703) 506-2051
E-Mail:  c.lee@mooreandlee.com

10