# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *for the use and benefit of* | ) | |
| STROMBERG METAL WORKS, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. L 02 CV 3188** |
| | ) | |
| BELL BCI COMPANY, et al. | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO REOPEN CASE AND LIFT STAY

Plaintiff, Stromberg Metal Works, Inc. ("Stromberg"), by undersigned counsel, files this Memorandum in Support of its Motion to Reopen Case and Lift Stay and states as follows:

### INTRODUCTION

Bell and USF&G requested a stay of this case and the Court denied the Motion to Dismiss or Stay. Thereafter, Stromberg agreed to a stay of this case in exchange for certain promises made by Bell as set forth in a partial settlement agreement, *i.e.*, payment of Stromberg's contract balance and extra work costs and Bell's promise to pursue Stromberg's extended general conditions cost claim and cumulative impact claim in Bell's case against the government in the Court of Federal Claims. This Court granted a stay of this case based on the agreement of the parties.

Bell breached the partial settlement agreement by failing to pursue Stromberg's extended general conditions cost claim against the government. Bell also misled Stromberg into agreeing to execute the partial settlement agreement because Bell never intended to pursue Stromberg's extended general conditions cost claim against the government. Pursuant to the prevention

doctrine, Bell has prevented the condition for reopening this case from occurring and therefore the condition for reopening this case is waived or excused. Furthermore, Bell is responsible to pay Stromberg's extended general conditions costs because: (1) Bell has either collected those costs from the government years ago when it entered into Modification No. 93 to its contract with the government or (2) Bell prevented the collection of these costs from the government when it entered into Modification No. 93 without seeking to collect these costs and provided the government with a release. Based on these facts and the applicable law, this case should be reopened and the stay of the case lifted in order to adjudicate Stromberg's extended general conditions costs claim.

## **FACTS**

This action involves construction work that was performed on a project known as National Institutes of Health, Building 50 – Consolidated Laboratory Facility, Phase II (the "Project") located in Bethesda, Maryland. The owner of the Project is the United States of America, acting by and through the Department of Health and Human Services (the "Government"). See Affidavit of Richard Freeman, attached as **EXHIBIT 1**, at ¶ 2.

On or about March 13, 1998, the Government awarded Contract No. 263-98-C-0102 (the "Prime Contract") to Bell BCI Company ("Bell") to serve as the general contractor for the construction work on the Project. As required by the Prime Contract, Bell, as principal and general contractor, provided a labor and material payment bond that guaranteed payment to subcontractors providing labor and materials to the Project. United States Fidelity & Guaranty Company ("USF&G") was the surety on said labor and material payment bond. See Affidavit of Richard Freeman, attached as **EXHIBIT 1**, at ¶ 3.

On or about April 24, 1998, Bell entered into a subcontract (the "Subcontract") with Stromberg whereby Stromberg was to perform the fabrication and installation of the mechanical HVAC sheet metal ductwork for the Project, as required by Bell's Prime Contract with the Government.  See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 4.

The Government issued hundreds of changes during the project causing substantial delay and disruption to the work.  In March 1999, modification of the ductwork in the interstitial spaces was required to accommodate walkways.[1]  Throughout the summer, fall, and winter of 1999, further changes and design problems impacted installation of the ductwork.  Stromberg advised Bell of the extensive costs it was incurring and requested an equitable adjustment as well as time extensions.  See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 5.

On June 19, 2000, Stromberg submitted an initial claim based on a per diem delay rate because at that time Stromberg was unable to evaluate the overall impact of the changes and delays on the project.  This initial claim, totaling $658,914, was subsequently amended.  See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 6.

On November 27, 2000, Stromberg advised Bell that its work was expected to be delayed over one year and that the scope of its work continued to be cardinally changed by seemingly nonstop design revisions.  Stromberg persistently expressed its concern to Bell about the manner in which the changes were impacting and delaying completion of the project, but the design modifications kept coming through September, 2001.  During this project, change work amounted to nearly 65 percent of Stromberg's work which is well in excess of the amount of change work Stromberg usually performs.  See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 7.

---

[1] Interstitial spaces are spaces between floors of a building where mechanical and other equipment is installed.

On December 19, 2001, Stromberg submitted its final claim to Bell for additional costs stemming from project impact and delay.  This claim, totaling $1,689,912, was divided into two parts:  (1) costs incurred prior to August 31, 2000; and (2) costs incurred after August 31, 2000. See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 8.  Bell submitted a Request for Equitable Adjustment ("REA") to the Government on April 5, 2002, which included all of Stromberg's claim.  See Bell's Amended Response to Stromberg's Second Request for Admissions, Response No. 12 (see **EXHIBIT 5** discussed *infra* at p. 7).  The Contracting Officer denied Bell's REA.

On September 30, 2002, Stromberg filed a Complaint against Bell and USF&G.  In the Complaint, Stromberg brought a payment bond action against both Bell and USF&G and a breach of contract action against Bell for unpaid subcontract work performed and for the unpaid costs of labor, materials and/or services provided to the Project.  See Complaint.

At the time Stromberg filed its Complaint it was unaware that, on October 2, 2000, Bell and the Government had entered into Contract Modification No. 093 ("Mod 93") in the amount of $2,296,963.  See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 9; see also a copy of Mod 93 attached hereto as **EXHIBIT 2**.  This modification extended the contract completion date to April 15, 2001 and provided Bell a "full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000." Mod 93 also states "[t]his agreement does not in any way affect entitlement to the direct cost of performance of any disputed changes.  It does, however, incorporate the time impact of any disputed changes issued on or before August 31, 2000."

Prior to Mod 93's execution by the Government and Bell, Stromberg was never informed of nor included in the negotiation of this nearly $2.3 million delay settlement.  Stromberg thus had no input into this settlement, no opportunity to update its claim, and no opportunity to

express approval or disapproval over the settlement sum.  Following execution of Mod 93, Bell did <u>not</u> inform Stromberg of this settlement.  Stromberg discovered Mod 93 in the documents produced by the Government pursuant to a Freedom of Information Act request brought by Stromberg.  See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 10.

On October 24, 2002, Bell and USF&G filed a Motion to Dismiss or Stay the Complaint Pending Exhaustion of Mandatory Dispute Procedures.  In the Motion, Bell and USF&G argued Stromberg's claims were premature because they were the subject of contractually-imposed disputes procedures that had not been fully completed and Bell had not yet received payment from the Government for Stromberg's claim.

On November 12, 2002, Stromberg filed an Opposition to the Motion to Dismiss or Stay Complaint.  In the Opposition, Stromberg argued the Motion should be denied because (1) Stromberg's subcontract contains *no requirement* to exhaust contract disputes procedures, (2) the bulk of Stromberg's claim already had been settled between Bell and the Government in Mod 93, and (3) Stromberg's surety bond claim under the Miller Act may proceed regardless of any contractually imposed disputes procedures and regardless of whether or not Bell had received payment from the Government.

While the Motion to Dismiss or Stay was still pending, on April 18, 2003, Stromberg filed a Motion for Leave to Serve Discovery on Bell.  In the Motion for Leave, Stromberg argued discovery was germane to the resolution of the outstanding Motion to Dismiss particularly regarding Mod 93 and whether that modification resulted in Bell settling all disputes and claims up through and including August 31, 2000.

On June 3, 2003, Bell filed suit against the Government in the United States Court of Federal Claims in an action styled *Bell BCI Company v. United Sates*, No. 03-1613C (the "Court of Federal Claims litigation").

On June 23, 2003, this Court denied the Motion to Dismiss or Stay with regard to the payment bond claim and denied the Motion to Dismiss or Stay with regard to the breach of contract claim, without prejudice to re-file at the close of discovery.  The Court denied the Motion for Leave to file discovery as moot.

Thereafter, the parties engaged in some discovery.  For instance, Bell responded to Stromberg's First Request for Admissions.  A copy of Bell's Response to Stromberg's First Request For Admissions is attached as **EXHIBIT 3**.  In its Response to Request for Admission No. 2, Bell denied Mod 93 "settled with the Government Stromberg's claims for all delays resulting from any and all Government changes transmitted to Bell on or before August 31, 2000."  In its Response to Request for Admission No. 7, Bell also denied it expressly released the Government from all delays resulting from any and all Government changes transmitted to Bell on or before August 31, 2000 by executing Mod 93.  In addition, in Bell's Answers to Stromberg's First Set of Interrogatories, a copy of which is attached as **EXHIBIT 4**, Bell responded to Interrogatory No. 7, which asked Bell to set forth the legal and factual basis for its allegation that Stromberg was not entitled to be compensated for delay to the Project, by stating the following (emphasis added):

> Stromberg's entitlement to recover for delay is governed by the terms and conditions of the subcontract between Bell and Stromberg.  As set forth in the subcontract, Stromberg is entitled to be compensated for delay only to the extent that Stromberg complied with the subcontract's notice requirements and to the extent that Bell recovers from the Government. <u>At this time, the Government has not paid Bell any compensation for the delay that Stromberg alleges it incurred.  Thus, at this time, Bell does not owe Stromberg any sum of money for alleged delay.</u>

In its Amended Response to Request for Admission No. 12, Bell stated that in the Court of Federal Claims litigation it "requested, *inter alia*, to have the Government's denial of subcontractor claims (including Stromberg's) overruled. A copy of Bell's Amended Responses to Stromberg's Second Request For Admissions is attached at **EXHIBIT 5**.

Stromberg's supplemental answer to Bell's Interrogatory No. 4 (a copy of Stromberg's Supplemental Answers to Bell's Interrogatories is attached as **EXHIBIT 6**), which requested Stromberg to "[s]tate in detail each and every component of the $1,756,730.00 which you claim is 'the current amount due and owing Stromberg' in paragraph 18 of your Complaint," stated the following:

> The current amount due and owing to Stromberg is **$1,295,616.00**. This amount is calculated as follows:

**Extended Field Overhead**

| General Conditions | Amount |
|---|---|
| Direct Overhead | $   396,052.00 |
| G&A | $     94,087.00 |
| Indirect Overhead | $   442,735.00 |
| TOTAL FIELD OVERHEAD | $   932,874.00 |
| Less Change Order Overhead | ($   159,640.00) |

| | |
|---|---|
| Start of Contract | 4/24/1998 |
| Substantial Completion | 4/30/01 |
| Total Duration | 1,102 Calendar Days |
| Total Daily Overhead Rate | $        846.53 |
| Total Daily Overhead Rate w/profit (10%) | $        931.18 |

| | |
|---|---|
| Original Completion Date | 6/29/2000 |
| Actual Completion Date | 4/30/2001 |
| Total Days of Delay | 305 |

**Total Extended Field Overhead**     **$  284,010.00**

**Total Impact Delay Damages**     **$  944,789.00**
(See Exhibit A for breakdown of Impact Delay)

**Extra work and unpaid contract balances** $ **66,817.00**

**Total Claimed Amount**                    **$1,295,616.00**

Just prior to the date Bell was required to exchange its expert report with Stromberg, counsel for Bell contacted counsel for Stromberg regarding an interim partial settlement. At the time, Bell was concerned its expert report in this action might prejudice Bell's position in its claims against the government.

On January 22, 2004, Stromberg, Bell and USF&G filed a Stipulated Order Regarding Partial Settlement and Stay of All Other Proceedings. A copy of the Stipulated Order is attached as **EXHIBIT 7**. In the Stipulation, the parties stated they had reached an agreement to settle Stromberg's claims for contract balance and extra work. The parties stated the only other claims asserted by Stromberg in the case were for extended field overhead and impact delay. The parties agreed to stay Stromberg's claim until the final conclusion of the Court of Federal Claims litigation and to reopen this case upon the resolution of that suit. On February 4, 2004, the Court granted the Stipulation by line order.

As stated in the Stipulation, the parties' agreement to stay was premised upon a partial settlement agreed to by the parties on January 22, 2004 (the "Partial Settlement Agreement"). A copy of the Partial Settlement Agreement is attached hereto as **EXHIBIT 8**. The amounts set forth in the Partial Settlement Agreement correspond to the amounts set forth in Stromberg's Supplemental Answer to Bell's Interrogatory No. 4 as follows: $66,817 was identified in both documents as "extra work and unpaid contract balances" and the $1,228,799 mentioned in the Partial Settlement Agreement is the total of $284,010.00 for "Total Extended Field Overhead" + $944,789.00 for "Total Impact Delay Damages" as set forth in Stromberg's Supplemental

Answer to Bell's Interrogatory No. 4. Pursuant to the Partial Settlement Agreement, the parties

agreed as follows (emphasis added):

1. By January 30, 2004, BELL will pay Stromberg $66,817, in full settlement of Stromberg's claims for contract balance and extra work in the above-referenced action. The parties' subcontract records will be reconciled to account for the payment. **The only damages claim remaining in the above-referenced action against Bell and USF&G is Stromberg's claim for $1,228,799, based on alleged extended field overhead and impact delay (hereinafter "delay claim").**

2. Stromberg will stay its delay claim against BELL and USF&G until the final conclusion of the Court of Federal Claims litigation. Thus, the above-referenced action will be stayed in its entirety until the final conclusion of the Court of Federal Claims litigation.

3. Upon BELL's request, Stromberg will cooperate with BELL in BELL's prosecution of Stromberg's delay claim in the Court of Federal Claims litigation including providing an expert witness, if necessary. Stromberg shall bear the costs associated therewith. **BELL shall retain full control and discretion with regard to the prosecution and resolution of Stromberg's delay claim.**

4. **BELL will ask the Court of Federal Claims to make separate findings regarding Stromberg's delay claim.** Subject to ¶ 5 below, Stromberg will accept the Court of Federal Claims findings and damages award, if any.

5. **In the event that the Court of Federal Claims determines that BELL did something to prejudice Stromberg's delay claim,** or if BELL and the Government reach a settlement in the Court of Federal Claims litigation and Stromberg, in good faith, is not satisfied with the amount of the settlement proceeds, if any, that BELL in its discretion allocates to Stromberg, **then Stromberg may, after the final conclusion of the Court of Federal Claims litigation, move to lift the stay in the above-referenced action and proceed on its delay claim.** In that event, Stromberg's delay claim will not exceed the amount of $1,228,799, exclusive of interest, that is set forth in the expert report and supplemental interrogatory answers that Stromberg submitted in the above-referenced action.

A year and half after the Stipulation was filed in this case, on July 15, 2005, Bell filed

Plaintiff's Cross-Motion for Partial Summary Judgment and Opposition to Defendant's Motion

for Partial Summary Judgment ("Bell's Motion") in the Court of Federal Claims litigation.  A copy of Bell's Motion is attached hereto as **EXHIBIT 9**.  In Bell's Motion, Bell stated the following (emphasis added) (Bell's Motion at pp. 5 and 12, fn. 1):

> Mod. 93 did not include any payment for labor inefficiencies or cumulative impact.  Rather, the provisions of **Mod. 93**, reflecting the negotiations preceding it, **provided only compensation for direct costs of the work and delay (i.e., extended performance duration)**, not labor inefficiencies nor the cumulative impacts of changes issued prior to it.
>
> * * * *
>
> **Bell wants to make clear that in this litigation it is not asserting a claim for the delay for the changes covered in Mods. 93-140**.  Rather, with respect to Mods. 93-140, BELL is seeking recovery based on their contribution to the overall labor inefficiency and cumulative impact that BELL suffered.  **BELL's claim for a time extension in this litigation**, which is not the subject of the cross-motions, **is based on the modifications for which it indisputably reserved its right to maintain claims based on delay, and not on Mods. 93-140**.

The Court of Federal Claims denied the motions for partial summary judgment and the case proceeded to trial.  See Judge Wheeler's Opinion and Order regarding the cross-motions for summary judgment filed July 14, 2006, attached hereto as **EXHIBIT 10**, at p. 9.

Prior to trial in the Court of Federal Claims litigation, Stromberg revised its impact claim from the $944,789 amount set forth in its Supplemental Answer to Interrogatory No. 4 to an $812,092 claim for cumulative impact.  See Judge Wheeler's Opinion and Order filed, after the trial of the case, on April 21, 2008, a copy of which is attached hereto as **EXHIBIT 11**, at pp. 24-26.  Stromberg revised its claim to a lesser amount because it learned that Bell had waived some of its inefficiency claim in certain change orders Bell had agreed to with the Government.  See Affidavit of Richard Freeman, **EXHIBIT 1,** at ¶ 11.

The Court of Federal Claims litigation went to trial on October 15, 2007.  Bell would not permit Stromberg's attorney to participate at trial.  Stromberg's attorney, however, did assist in

preparing Stromberg's witnesses and prepared a direct examination for those witnesses. Bell's attorney presented Stromberg's witnesses at trial, but did not elicit all the testimony to which Stromberg's attorney had contemplated in the prepared direct examination. <u>In particular, Bell's attorney did not elicit testimony from Stromberg's witnesses regarding Stromberg's claim for extended field overhead.</u> Rather, Bell's attorney elicited testimony from Stromberg's witnesses exclusively regarding Stromberg's cumulative impact claim totaling $812,092. See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 12.

The Court's Order in the Court of Federal Claims litigation was filed on April 21, 2008. See **EXHIBIT 11**. The Court sustained Stromberg's cumulative impact claim and awarded Stromberg the full $812,092 it sought for this claim (plus CDA interest from April 5, 2002). See Judge Wheeler's Opinion, **EXHIBIT 11**, at pp. 35-36. In addition to Stromberg's award, the Court also awarded Bell $6,200,672 (plus CDA interest from April 5, 2002), which included: (1) $2,058,456 for Bell's cumulative impact claim (this amount did not include any costs for Bell's subcontractors because the Court addressed the subcontractor's cumulative impact claims separately); (2) $1,602,053 for Bell's delay damages (this amount did not include any amount for delay damages for Stromberg – see below); (3) $563,125 for Bell's contract balance; (4) $1,610,987 for Bell's extra work; (5) $366,051 in profit on the extended general conditions and labor inefficiency costs awarded to Bell. See Judge Wheeler's Opinion, **EXHIBIT 11**, at pp. 31, 34-36. The Government has filed a notice of appeal of the decision of the Court of Federal Claims. That appeal is pending.

The Court described the time in dispute with respect to Bell's delay claim as a 284 day period from April 30, 2001 until February 8, 2002. The Court used this time period because the Government had given Bell a time extension through April 30, 2001 in Modifications 5, 24, 78

and 93.  See Judge Wheeler's Opinion, **EXHIBIT 11**, at pp. 33.  The use of that time period also comports with Bell's acknowledgement, in its Cross Motion for Partial Summary Judgment, that Mod 93 had compensated Bell for delay incurred as a result of changes issued before the execution of the modification.  See Bell's Motion, **EXHIBIT 9**, at pp. 5 and 12, fn. 1.

Stromberg's delay claim for extended general conditions costs, unlike Bell's delay claim which it presented at the trial in the Court of Federal Claims litigation, relates to delays between June 29, 2000 and April 30, 2001.  This time period applies to Stromberg's delay claim because the original project completion date was June 29, 2000 and Stromberg was substantially complete with its base contract work by April 30, 2001.  The difference between the original contract completion date and the date upon which Stromberg was substantially complete is 305 calendar days.  After April 30, 2001, Stromberg performed only change work.  Thus, the period after April 30, 2001 is not part of Stromberg's delay claim.  See Expert Report of Barry A. Brower of Brower, Kriz & Stynchcomb, LLC dated November 17, 2003, attached hereto as **EXHIBIT 12**, at pp. 4-6; see also Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 13. Stromberg's delay claim concerns the period of time for which Bell collected delay damages in Mod 93.  Further, as acknowledged by Bell in its Cross-Motion for Summary Judgment, Bell did not claim any delay damages in the Court of Claims litigation for the delay occurring in the time period that applies to Stromberg's delay claim.

At the time Stromberg entered the Partial Settlement Agreement, it did not know Bell would not seek to collect its delay claim for extended general conditions costs from the Government.  Likewise, Stromberg did not know Bell would refuse to present the claim For Stromberg's delay costs at the trial of the Court of Federal Claims litigation.  That, however, is exactly what occurred.  Further, Bell's actions in the Court of Federal Claims litigation with

respect to Stromberg's delay claim was directly contrary to the position of Bell in this litigation prior to the execution of the Partial Settlement Agreement as reflected in its responses to Stromberg's discovery requests (discussed above).    See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 14.

Recently, Stromberg has requested Bell pay Stromberg its extended general conditions costs because, given Bell's position in the Court of Federal Claims litigation, Bell did not seek to receive payment for the claim.   Stromberg informed Bell that if it did not pay Stromberg's extended general conditions costs claim, Stromberg would move to reopen this case.   See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 15.   Bell's counsel responded to Stromberg's request for payment by stating Stromberg could not reopen the case.   Bell's counsel also stated that Bell's current position is that "it does not owe Stromberg any monies beyond those that ultimately may be recovered from the Government when any appeal from the Court of Federal Claims' judgment becomes final and the Government pays what it owes for Stromberg's claim." See letters of Richard O. Wolf, counsel for Bell, dated May 20, 2008 and June 12, 2008, attached hereto as **EXHIBITS 13** and **14** respectfully.   What Mr. Wolf fails to acknowledge is the Court of Federal Claims did not even consider Stromberg's extended general conditions cost claim because Bell never presented it.   See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 15.

Stromberg's extended general conditions costs claim has now been adjusted to $235,405 after adjustments to the total daily overhead rate and total daily overhead rate with profit.   The adjusted calculations for Stromberg's extended general conditions costs claim are as follows (see Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 16):

**Extended Field Overhead**

| General Conditions | Amount |
|---|---|
| Direct Overhead | $ 396,052.00 |
| G&A | $ 94,087.00 |
| Indirect Overhead | $ 442,735.00 |
| TOTAL FIELD OVERHEAD | $ 932,874.00 |
| Less Change Order Overhead | ($ 159,640.00) |

| | |
|---|---|
| Start of Contract | 4/24/1998 |
| Substantial Completion | 4/30/01 |
| Total Duration | 1,102 Calendar Days |
| Total Daily Overhead Rate | $ 701.66 |
| Total Daily Overhead Rate w/profit (10%) | $ 771.82 |

| | |
|---|---|
| Original Completion Date | 6/29/2000 |
| Actual Completion Date | 4/30/2001 |
| Total Days of Delay | 305 |

**Total Extended Field Overhead**
**$771.82/day x 305 days = $ 235,405.00**

Stromberg also claims interest on this amount from November 1, 2000 to the present which now totals over $325,000. See Affidavit of Richard Freeman, **EXHIBIT 1**, at ¶ 17.

## ARGUMENT

**A.    Bell breached the Partial Settlement Agreement by failing to present Stromberg's extended overhead claim in the Court of Federal Claims litigation**

The Partial Settlement Agreement states two claims in this lawsuit survive after the agreement is executed and the $66,817 amount for contract balance and extra work is paid. These two claims were Stromberg's extended field overhead claim and Stromberg's labor impact claim. In the Partial Settlement Agreement, these two claims are referred to as the "delay claim." The claims, however, are not really both delay claims. Rather, one is a claim for delay costs, *i.e.*, the extended field overhead claim, and the other claim is a claim for the costs associated with the impact to labor productivity (*i.e.*, lost efficiency) stemming from the cumulative impact of changes to the contract.

14

Bell retained full control over the presentation of Stromberg's claims in the Court of Federal Claims litigation. Bell presented Stromberg's cumulative impact claim at the trial of the Court of Federal Claims litigation,[2] but did not present the claim for Stromberg's extended field overhead costs. Because Bell did not permit Stromberg to present its extended field overhead claim in the Court of Federal Claims litigation, Stromberg had no recourse within the context of that case to have its claim heard. Rather, it can only have that claim heard in this action.

It is clear why Bell did not include Stromberg's extended field overhead claim in the Court of Federal Claims litigation. The reason was admitted by Bell in its Cross-Motion for Summary Judgment in the Court of Federal Claims litigation at p. 5 when it stated, "Mod. 93 . . . provided . . . compensation for direct costs of the work and delay (i.e., extended performance duration). Stromberg's extended field overhead claim is a claim for delay, i.e., the field overhead costs incurred due to extended performance duration. By making this admission, Bell could not assert Stromberg's claim for extended field overhead. Rather than make that admission of fact in its discovery responses in this case, Bell denied this fact.

The Partial Settlement Agreement specifically states that one of Bell's obligations under the agreement is to "ask the Court of Federal Claims to make separate findings regarding Stromberg's delay claim." Bell did not perform this obligation. Rather, Bell asked the Court of Federal Claims to make a separate finding regarding Stromberg's cumulative impact claim (which the court did), leaving out entirely Stromberg's extended field overhead claim. The Partial Settlement Agreement required Bell to pursue both claims, which it did not do. The failure to include the extended field overhead claim in the Court of Federal Claims litigation is a

---

[2] The Court of Federal Claims awarded Stromberg its cumulative impact costs in the Court of Federal Claims litigation, but the Government has appealed that ruling. Stromberg does not seek to reopen this case in order to adjudicate the cumulative impact costs claim at this time. Stromberg will wait until the conclusion of the appeal of the Court of Federal Claims decision to pursue collection of that claim in this Court.

breach of the Partial Settlement Agreement.  As a result, Stromberg should be relieved of its

promise to stay this case and the case should be reopened and the stay lifted.

**B.    Bell fraudulently induced Stromberg into executing the Partial Settlement Agreement by stating it would pursue Stromberg's extended field overhead claim in the Court of Federal Claims litigation and that it had not released the Government for liability for the claim by executing Mod 93**

The Court of Appeals of Maryland, in *Alleco Inc. v. Harry & Jeanette Weinberg*

*Foundation, Inc*., 340 Md. 176, 665 A.2d 1038, 1047 (Md. 1995), set forth the elements of a

fraud claim as follows (internal quotations and citations omitted):

> In Maryland, in order to state a cause of action in fraud or deceit, a plaintiff must allege facts disclosing
> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

Prior to the execution of the Partial Settlement Agreement, Bell asserted in its responses

to Stromberg's written discovery its belief that Stromberg's entire claim survived Mod 93 and

that Bell intended to pursue the entire claim against the Government in the Court of Federal

Claims litigation.    Based on Bell's assertions in its responses to Stromberg's discovery,

Stromberg agreed to permit Bell to pursue the claim in the Court of Federal Claims litigation and

to stay the adjudication of the claim in this action until the Court of Federal Claims litigation was

concluded.  Had Stromberg known that Bell had no intention of pursuing its extended field

overhead claim in the Court of Federal Claims litigation, but, rather, intended to specifically state

that it was not pursuing delay claims, such as Stromberg's, that related to the extended

performance between the original completion date and the extended completion date of April 30,

2001 for which Bell had already been compensated for in Mod 93, Stromberg would not have agreed to stay its claim for extended general conditions.

Based on the two directly opposing positions Bell took in its responses to Stromberg's discovery requests and its position in the Court of Federal Claims litigation, Bell intentionally misled Stromberg into believing that it would present the claim in the Court of Federal Claims litigation when it knew that it could not and would not do so. Bell's false representation to Stromberg regarding its intention to pursue the extended field overhead claim in the Court of Federal Claims litigation fraudulently induced Stromberg into executing the Partial Settlement Agreement.[3] As a result, the agreement to stay the extended field overhead claim is of no force or effect and the case should be reopened and the stay lifted.

**C.    Bell has prevented a condition from occurring that would permit Stromberg to reopen this case, thereby waiving or excusing the non-occurrence of the condition**

The Partial Settlement Agreement states Stromberg can reopen this case if the Court of Federal Claims determines that Bell did something to prejudice Stromberg's delay claim. Stromberg anticipated Bell had prejudiced its delay claim based on the provisions of Mod 93. Stromberg specifically agreed to the provision in the Partial Settlement Agreement permitting the reopening of this case if the Court determines that Bell did something to prejudice Stromberg's delay claim because of Stromberg's suspicions regarding the potential release of its extended field overhead claim in Mod 93. The Court, however, was never asked to address this issue. Instead, Bell avoided that issue by not presenting Stromberg's extended field overhead claim to the Court of Federal Claims.

Had the extended field overhead claim been presented to the Court of Federal Claims, the Court would have found the claim had been released by Bell in Mod 93. If the Court had so

---

[3] It could also be argued that given Bell's false representations which resulted in the parties' joint stipulation, Bell's actions represented a fraud upon this Court.

found, then the condition in the Partial Settlement Agreement providing Stromberg a right to reopen this case if the Court determined Bell did something to prejudice Stromberg's delay claim would have occurred.  By leaving the claim out entirely, Bell has prevented the condition for reopening this case from occurring.

The United States Court of Appeals for the Fourth Circuit has stated "[t]he prevention doctrine is a generally recognized principle of contract law according to which if a promisor prevents or hinders fulfillment of a condition to his performance, the condition may be waived or excused."  *Moore Brothers Co. v. Brown & Root, Inc*., 207 F.3d 717, 725 (4th Cir. 2000) (citing Restatement (Second) of Contracts § 245 (1981); 13 Williston on Contracts, 4th ed., Lord § 39:4; 17A Am.Jur.2d, Contracts, § 703; 17B C.J.S., Contracts, § 530); *In re Peanut Crop Insur. Litigation*, 524 F.3d 458, 474 (4th Cir. 2008) (quoting same from *Brown & Root* case); *Jay-Ton Construction Co. Inc. v. Bowen Construction Services, Inc.*, 2003 WL 22656912, *15 (Va. Cir. Ct. 2003) (citing *Brown & Root* and quoting the following from *Parrish v. Wightman*, 184 Va. 86, 93, 34 S.E.2d 229, 232 (1945): "Where a contract is performable on the occurrence of a future event there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event, particularly where it is dependent in whole or in part on his own act; and, where he prevents the fulfillment of a condition precedent or its performance by the adverse party, he cannot rely on such condition to defeat his liability.").  The Fourth Circuit has also recognized that Maryland courts have applied the prevention doctrine.  *Meson v. Gatz Technology Services Corp.*, 507 F.3d 803, 806 (4th Cir. 2007) (citing *Singer Construction Co. v. Goldsborough*, 147 Md. 628, 128 A. 754 (1925)).

In *Brown & Root*, a subcontractor brought suit against a general contractor and its payment bond surety seeking outstanding payments.  The general contractor asserted the pay

when paid defense to the subcontractor's suit. *Brown & Root*, 207 F.3d at 721. The Fourth Circuit upheld the District Court's finding that the contractor's conduct had hindered fulfillment of the "pay when paid" condition precedent in the subcontract.[4] *Id*. at 724-726. Based on this finding, the Fourth Circuit also upheld the District Court's legal conclusion that the condition precedent was waived or excused pursuant to the prevention doctrine. *Id*. In reaching its decision, the Fourth Circuit stated, "[t]he prevention doctrine does not require proof that the condition would have occurred 'but for' the wrongful conduct of the promisor; instead it only requires that the conduct have 'contributed materially' to the non-occurrence of the condition." *Id*. at 725.

In *Northeast Drilling, Inc. v. Inner Space Service, Inc*., 243 F.3d 25 (1st Cir. 2001), a drilling and blasting sub-subcontractor (NDI) brought suit against a dredging subcontractor (ISSI) for amounts due for change work in an expanded area of the project. The sub-subcontract stated NDI would be paid for the change work if and only if ISSI receives compensation from the general contractor (Atkinson). *Id*. at 40. The United States Court of Appeals, First Circuit, upheld the District Court's decision to award NDI the amount it claimed for the change work in the expanded area despite the fact that ISSI had not yet received payment for this work from

---

[4] The facts found by the District Court regarding this issue are as follows: (1) the lenders who were financing the project wanted to contain the costs of the project; (2) they hesitated to agree to a contract that contained specific illustrations of design changes that would warrant additional payment; (3) the Owner of the project and the general contractor agreed to delete the specific illustrations of design changes from the prime contract to placate the lenders and then assured the lenders that no substantial changes in the work were anticipated; (4) the Owner and the general contractor reached a side agreement concerning additional change in scope illustrations and concealed that agreement from the lenders; (5) the general contractor did not inform the subcontractors that the design change illustrations and the potential need for additional change in scope work was hidden from the lenders and therefore not adequately funded; (6) the general contractors ordered the subcontractors to proceed with additional work; (7) after the additional work was completed the general contractor and subcontractors sought arbitration of their claim for additional payment from the Owners; (8) the arbitrators ordered the Owners to pay for the additional work; (9) the Owners did not have the funds to pay the general contractor for the arbitration award because the lenders were not made aware of the significant likelihood of additional work so financing was never arranged to cover the payment of the additional work. *Brown & Root*, 207 F.3d at 721.

Atkinson.  *Id*.  The First Circuit's decision in this regard is based on the prevention doctrine.  *Id*.

The First Circuit stated the following regarding its decision on this issue (*id*.):

> The district court's $140,000 award rested, however, on an alternate ground: that ISSI effectively surrendered its authority to enforce the condition precedent (Atkinson's payment) by waiting six months after NDI's demobilization to submit the change-order requests to Atkinson for NDI's work in the "expanded" area.  Under the so-called prevention doctrine, a contractual condition precedent is deemed excused when a promisor hinders or precludes fulfillment of a condition and that hindrance or preclusion contributes materially to the nonoccurrence of the condition.  *Restatement (Second) of Contracts* § 245 (1981).  In this case, the court found that in spite of having the information needed to submit change-order requests to Atkinson, ISSI failed to submit such requests until September 1999, or nearly six months after the completion of NDI's work.  Because this delay materially contributed to Atkinson's failure to pay ISSI before the NDI-ISSI trial, ISSI is estopped from arguing that it was entitled to be paid by Atkinson before it reimbursed NDI for drilling and blasting in the "expanded" area.  13 Richard A. Lord, *Williston on Contracts* § 39:4 (4th ed. 2000) ("[W]here one improperly prevents the performance or the happening of a condition of his or her own promissory duty, the offending party thereby eliminates it as a condition ...."); *cf. Moore Bros. Co. v. Brown & Root, Inc*., 207 F.3d 717, 724-26 (4th Cir. 2000) (applying prevention doctrine to render inoperative "pay when paid" condition precedent in construction subcontract).

Pursuant to the prevention doctrine, as described in *Brown & Root* and *Northeast Drilling*, when Bell failed to present Stromberg's extended field overhead claim to the Court of Federal Claims, it prevented or hindered the occurrence of the condition (or at the very least contributed materially to the non-occurrence of the condition) in the Partial Settlement Agreement for reopening this case.  As a result, Bell has waived or excused the non-occurrence of the condition for reopening the case.  For this additional reason, the Court should reopen this case and lift the stay.

**C.    Bell is responsible to pay Stromberg its extended field overhead costs**

Over three months after Bell received Stromberg's original delay claim, Bell executed Mod 93 with the Government.  When it executed Mod 93, Bell either: (1) failed to include

20

Stromberg's extended field overhead in the modification, thereby preventing Stromberg from collecting the delay costs from the Government because Bell released the Government for the claim without seeking to collect for Stromberg's delay costs or (2) Bell collected Stromberg's delay costs in Mod 93 and then failed to pay Stromberg the amount it collected.  If the former occurred, then Bell cannot assert the pay when paid defense because of the prevention doctrine. See supra *Brown & Root* and *Northeast Drilling*; see also *Preload, Inc. v. Marino Construction Co., Inc.*, 1991 WL 202651, *4 (N.D. Ill. 1991).  If the latter occurred, then Bell has breached the Subcontract and the prompt payment clause in the Prime Contract which obligated Bell to pay its subcontractors within seven days of receipt of payment from the Government.

In *Preload Inc.*, the Court stated (certain internal citations omitted) (emphasis added):

> Illinois courts have recognized the validity of the "pay when paid" clause. Moreover, the clause, if clear and unambiguous, is deemed to create a valid condition precedent to the contractor's duty to pay the subcontractor. It is equally true, however, that the performance of a condition precedent is excused if the party for whose benefit the condition is created prevents the condition from occurring.  Williston on Contracts § 1296 (3d ed. 1968) see also *Standard Asbestos Mfg. Co. v. Kaiser*, 316 Ill.App. 441, 45 N.E.2d 75 (Ill.App.Ct 1st Dist. 1942) (abstract) (**holding that where a contractor has by its own fault lost the right to payment from the owner, the subcontractor is entitled to compensation from the general contractor**).

Stromberg does not know what delay costs were collected by Bell pursuant to Mod 93. Stromberg knows Bell recovered $2,296,963 for Mod 93 and the modification was supposed to provide Bell with a "full and equitable adjustment for all delays resulting from any and all Government changes transmitted to [Bell] on or before August 31, 2000."  This language indicates Bell collected delay costs for itself and its subcontractors, including Stromberg's extended field overhead costs.   No matter the outcome of the question regarding whether Bell has prevented Stromberg from collecting its delay costs from the Government through Mod 93 or

it collected Stromberg's delay costs when it was paid for Mod 93, the result is the same -- Bell is now responsible to pay Stromberg its delay costs.

## CONCLUSION

Based on the foregoing, the Court should grant this Motion to Reopen this Case and Lift the Stay for the sole purpose of adjudicating Stromberg's claim for extended field overhead costs.

Respectfully submitted

_____\s\ *Nicole L. Campbell*_____
Nicole Lefcourt Campbell, Bar No. 14425
Huddles Jones Sorteberg & Dachille, P.C.
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
Telephone (301) 621-4120
Facsimile (301) 621-4473
Email: campbell@hjpc.com
Counsel for Plaintiff

Dated:  August  6 , 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the  6th  day of August, 2008, a copy of the foregoing Memorandum in Support of Motion to Reopen Case and Lift Stay was mailed, postage prepaid, to:

Richard O. Wolf, Esquire
Moore & Lee, LLP
1750 Tysons Boulevard, Suite 1450
McLean, Virginia 22102
r.wolf@mooreandlee.com

_____\s\ Nicole Lefcourt Campbell_____

22