UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA<br>*for the use and benefit of*<br>STROMBERG METAL WORKS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BELL BCI COMPANY, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. L 02 CV 3188 |

### AFFIDAVIT OF RICHARD B. FREEMAN IN SUPPORT OF
### MOTION TO REOPEN CASE AND LIFT STAY

I, Richard B. Freeman, being duly deposed and sworn, state and affirm under oath as follows:

1. I am over the age of eighteen and am fully competent to testify concerning the matters set forth herein. I am, and at all times relevant hereto was, the Executive Vice President for Stromberg Metal Works, Inc. ("Stromberg").

2. The above captioned action involves construction work that was performed on a project known as National Institutes of Health, Building 50 – Consolidated Laboratory Facility, Phase II (the "Project") located in Bethesda, Maryland. The owner of the Project is the United States of America, acting by and through the Department of Health and Human Services (the "Government").

3. Based on my review of the contract, on or about March 13, 1998, the Government awarded Contract No. 263-98-C-0102 (the "Prime Contract") to Bell BCI Company ("Bell") to serve as the general contractor for the construction work on the Project. Based on my review of



the payment bond, as required by the Prime Contract, Bell, as principal and general contractor, provided a labor and material payment bond that guaranteed payment to subcontractors providing labor and materials to the Project. United States Fidelity & Guaranty Company ("USF&G") was the surety on said labor and material payment bond.

4. On or about April 24, 1998, Bell entered into a subcontract (the "Subcontract") with Stromberg whereby Stromberg was to perform the fabrication and installation of the mechanical HVAC sheet metal ductwork for the Project, as required by Bell's Prime Contract with the Government.

5. The Government issued hundreds of changes during the project causing substantial delay and disruption to the work. In March 1999, modification of the ductwork in the interstitial spaces was required to accommodate walkways. Interstitial spaces are spaces between floors of a building where mechanical and other equipment is installed. Throughout the summer, fall, and winter of 1999, further changes and design problems impacted installation of the ductwork. Stromberg advised Bell of the extensive costs it was incurring and requested an equitable adjustment as well as time extensions.

6. On June 19, 2000, Stromberg submitted an initial claim based on a per diem delay rate because at that time Stromberg was unable to evaluate the overall impact of the changes and delays on the project. This initial claim, totaling $658,914, was subsequently amended.

7. On November 27, 2000, Stromberg advised Bell that its work was expected to be delayed over one year and that the scope of its work continued to be cardinally changed by seemingly nonstop design revisions. Stromberg persistently expressed its concern to Bell about the manner in which the changes were impacting and delaying completion of the project, but the design modifications kept coming through September, 2001. The latter changes often required

demolition and reinstallation of work that had already been performed. During this project, change work amounted to nearly 65 percent of Stromberg's work which is well in excess of the amount of change work Stromberg usually performs.

8. On December 19, 2001, Stromberg submitted its final claim to Bell for additional costs stemming from project impact and delay. This claim, totaling $1,689,912, was divided into two parts: (1) costs incurred prior to August 31, 2000; and (2) costs incurred after August 31, 2000.

9. At the time Stromberg filed its Complaint in this action it was unaware that, on October 2, 2000, Bell and the Government had entered into Contract Modification No. 093 ("Mod 93") in the amount of $2,296,963.

10. Prior to Mod 93's execution by the Government and Bell, Stromberg was never informed of nor included in the negotiation of this nearly $2.3 million delay settlement. Stromberg thus had no input into this settlement, no opportunity to update its claim, and no opportunity to express approval or disapproval over the settlement sum. Following execution of Mod 93, Bell did not inform Stromberg of this settlement. Stromberg discovered Mod 93 in the documents produced by the Government pursuant to a Freedom of Information Act request brought by Stromberg.

11. Prior to trial in the Court of Federal Claims litigation, Stromberg revised its impact claim from the $944,789 amount set forth in its Supplemental Answer to Interrogatory No. 4 to an $812,092 claim for cumulative impact. Stromberg revised its claim to a lesser amount because it learned that Bell had waived some of its inefficiency claim in certain change orders Bell had agreed to with the Government.

3

12. The Court of Federal Claims litigation went to trial on October 15, 2007. Bell would not permit Stromberg's attorney to participate at trial. Stromberg's attorney, however, did assist in preparing Stromberg's witnesses and prepared a direct examination for those witnesses. Bell's attorney presented Stromberg's witnesses at trial, but did not elicit all the testimony to which Stromberg's attorney had contemplated in the prepared direct examination. <u>In particular, Bell's attorney did not elicit testimony from Stromberg's witnesses regarding Stromberg's claim for extended field overhead.</u> Rather, Bell's attorney elicited testimony from Stromberg's witnesses exclusively regarding Stromberg's cumulative impact claim totaling $812,092.

13. Stromberg's delay claim for extended general conditions costs relates to delays between June 29, 2000 and April 30, 2001. This time period applies to Stromberg's delay claim because the original project completion date was June 29, 2000 and Stromberg was substantially complete with its base contract work by April 30, 2001. The difference between the original contract completion date and the date upon which Stromberg was substantially complete is 305 calendar days. After April 30, 2001, Stromberg performed only change work. Thus, the period after April 30, 2001 is not part of Stromberg's delay claim.

14. At the time Stromberg entered the Partial Settlement Agreement, it did not know Bell would not seek to collect its delay claim for extended general conditions costs from the Government. Likewise, Stromberg did not know Bell would refuse to present the claim at the trial of the Court of Federal Claims litigation. That, however, is exactly what occurred. Further, Bell's actions in the Court of Federal Claims litigation with respect to Stromberg's delay claim was directly contrary to the position of Bell in this litigation prior to the execution of the Partial Settlement Agreement.

4

15. Recently, Stromberg has requested Bell pay Stromberg its extended general conditions costs because, given Bell's position in the Court of Federal Claims litigation, Bell did not seek to receive payment for the claim. Stromberg informed Bell that if it did not pay Stromberg's extended general conditions costs claim, Stromberg would move to reopen this case. The Court of Federal Claims did not even consider Stromberg's extended general conditions cost claim because Bell never presented it.

16. Stromberg's extended general conditions costs claim has now been adjusted to $235,405 after adjustments to the total daily overhead rate and total daily overhead rate with profit. The adjusted calculations for Stromberg's extended general conditions costs claim are as follows:

**Extended Field Overhead**

| General Conditions | Amount |
|---|---|
| Direct Overhead | $ 396,052.00 |
| G&A | $ 94,087.00 |
| Indirect Overhead | $ 442,735.00 |
| TOTAL FIELD OVERHEAD | $ 932,874.00 |
| Less Change Order Overhead | ($ 159,640.00) |
| | |
| Start of Contract | 4/24/1998 |
| Substantial Completion | 4/30/01 |
| Total Duration | 1,102 Calendar Days |
| Total Daily Overhead Rate | $ 701.66 |
| Total Daily Overhead Rate w/profit (10%) | $ 771.82 |
| | |
| Original Completion Date | 6/29/2000 |
| Actual Completion Date | 4/30/2001 |
| Total Days of Delay | 305 |
| | |
| **Total Extended Field Overhead** | **$ 235,405.00** |

17. Stromberg also claims interest on this amount from November 1, 2000 to the present which now totals over $325,000.

5

I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing Affidavit are true to the best of my knowledge, information and belief.

8/6/08
Date

Richard B. Freeman
Executive Vice President
Stromberg Metal Works, Inc.

STATE OF MARYLAND   )
                    )ss:
COUNTY OF HOWARD    )

Before me, the undersigned, a Notary Public in and for said County of Howard, State of Maryland, personally appeared Richard B. Freeman and he being first duly sworn by me upon his oath, says that the facts alleged in the foregoing instrument are true.

Signed and sealed this 6th day of August, 2008.

County of Residence: Carroll

Commission Expires: 12/1/08

Notary Public Signature

CAROL M. REMY
Notary Public Printed

6