# EXHIBIT 11

# STROMBERG METAL WORKS, INC.



CONTRACTING – ENGINEERING

**MAIN PLANT & OFFICES:**
6701 Distribution Drive,
Beltsville, MD 20705
Tel: 301-931-1000
Fax: 301-931-1020

**RICHMOND PLANT:**
1804 Currie., Richmond, VA 23220
Tel: 804-355-6533
FAX: 804-353-0923

**SPECIALTY SHOP:**
2901 V Street, N.E.
Washington, D.C. 20018
Tel: 202-526-6300
Fax: 202-635-0443

**RALEIGH N. C. PLANT:**
5812 Triangle Drive, Raleigh, NC 27613
Tel: 919-781-2515
Fax: 919-781-6858

December 19, 2001

SENT VIA FEDERAL EXPRESS

Bell/BCI Company
10605 Concord Street
Suite 205
Kensington, Maryland 20895

ATTN: Mr. Jeremy Bardin
      Mr. Jerry Romandino
      Mr. Tom Bell

      RE: The National Institutes of Health Louis Stokes Laboratories
            – Building 50
            Contract No. 263-98-C-0102

      Subj: **Final Claim For Additional Costs Stemming From Impact and Delay** - $1,689,912

Gentlemen:

      Reference is made to our subcontract for the above project. Reference is also made to our numerous discussions, letters and notices concerning impact and delay to our work activities on the project as well as our concerns regarding the project schedule. By letter dated May 15, 2001 (**EXHIBIT B-1**), Stromberg submitted its preliminary claim for additional costs stemming from impact and delay in the amount of $797,218. In doing so, Stromberg fully reserved all rights to supplement its preliminary claim once our total additional costs could be accurately ascertained and computed. Now that our work on this project has been substantially completed, Stromberg is herewith submitting this final claim for additional costs stemming from impact and delay, in the total amount of $1,689,912. A complete itemization of these claimed additional costs is included in **EXHIBIT A-1** attached hereto.

Bell/BCI
December 19, 2001
Page 2

As advised in our preliminary claim, this final claim is comprised in two parts:

Part I – Delay /Extended Contract Performance Costs

| | | |
|---|---|---|
| A. | Delay Costs 1/1/00 – 8/31/00 – 243 Days | $ 354,399.85 |
| B. | Delay Costs 9/1/00 – 4/30/01 – 241 Days | $ 351,482.98 |
| C. | Delay Costs 5/1/01 – 10/5/01 – 157 Days | $ 228,974.39 |
| | **Subtotal Delay/Extended Performance Costs** | **$ 934,557.22** |

Part II – Labor Impact Costs

| | | |
|---|---|---|
| A. | Impact Costs 4/1/98 – 8/31/00 | $ 738,642.08 |
| B. | Impact Costs 9/1/00 – 10/5/01 | $   16,413.59 |
| | **Subtotal Labor Impact Costs** | $ 755,055.66 |

**Total Claimed Additional Costs Stemming From Impact & Delay**       **$1,689,912.89**

Due to the issues relating to Bell's Contract Modification No. 93 (included in **EXHIBIT B-1**), Stromberg has been careful to segregate costs incurred prior to August 31, 2000. Notwithstanding this fact and regardless of Bell's undisclosed deal with the Government, Stromberg is entitled to all costs claimed and submitted herein. Stromberg will leave to Bell's discretion which, if any, costs are submitted to the Government and which costs Bell is responsible for. However, Stromberg fully reserves all rights against Bell and Bell's payment bond surety for the costs claimed herein.

As Bell is aware, from the outset of this project Stromberg brought to Bell's attention problems and concerns with respect to Bell's schedule for Stromberg's work. The original completion date for our subcontract work on this project was September 30, 1999. However, pursuant to our subcontract Change Order No. 1, this completion date was extended to December 31, 1999 (for rough-in of ductwork only) not including the completion of our registers and diffusers. As Bell is also aware, prior to this Change Order (which was ratified in June of 1999) and since the issuance of this Change Order, Stromberg's work was significantly impacted and delayed by continuous changes. As of September 30, 2001, Stromberg had submitted 114 proposals for change work that radically changed the original scope of our subcontract and increased the work required under our subcontract by nearly 65%[1]. To compound the situation, many of our more recent changes have required us to remove ductwork that was installed pursuant to previous changes. This has resulted in not only a significant impact to our labor productivity but has also delayed and extended our contract duration by almost 100%.

---

[1] By separate cover, Stromberg is submitting a claim for its unpaid changes.

Bell/BCI
December 19, 2001
Page 3

As early as March 1999 changes were creating impact to our work. By letter dated March 17, 1999 (**EXHIBIT B-2**), Stromberg advised Bell that modification of ductwork in interstitial spaces to accommodate walkways would result in significant additional costs and time as well as an extraordinary impact to the performance of our ductwork rough-in. This change required not only demolition and reinstallation of re-engineered ductwork but also, where ductwork had not yet been installed, the re-engineered ductwork resulted in significant additional fittings. Accordingly, our letter advised Stromberg would have to completely start over again with our shop drawing process and coordination process for all but Level 6. Also, our letter provided notice of our claim for all additional costs and time stemming from this issue.

Thereafter, changes and design problems continued to impact the installation of our ductwork. Stromberg's letter of April 27, 1999 (**EXHIBIT B-3**) explained how design problems required Stromberg to perform extraordinary coordination efforts in order to accommodate the design problems in the systems which the Government required for the project. For this reason, our letter also indicated that we expected prompt settlement of the changes to resolve these issues. As a follow-up, our letter of April 29, 1999 (**EXHIBIT B-4**), reiterated the fact that Stromberg expected compensation for all additional costs stemming from the inadequate project design.

Although the design problems and changes continued throughout the Summer, Fall and Winter of 1999, by the Spring of 2000 we believed once again it was necessary to request a contract time extension and provide continuing notice of our claim. Accordingly, our letter of March 28, 2000 (**EXHIBIT B-5**) advised of the additional cost we were experiencing due to impact and delay and reiterated our intent to submit a claim for these additional costs. In this regard, since it was not possible at the time to evaluate the overall impact to the project schedule, by letter dated June 19, 2000 (**EXHIBIT B-6**), Stromberg submitted its initial claim for additional costs stemming from project delays based on a per diem delay rate. This claim totaled $658,914 and, as explained in our May 15, 2001 preliminary claim submission, this claim has now been amended and replaced. In computing the cost for delay and extended contract performance, **EXHIBIT A-2** sets forth an itemized revised daily rate which has been utilized for purposes of computing this final claim submission.

In the Fall of 2000, we again advised of the impact affect the numerous changes were having on our work activities. By letter dated November 27, 2000 (**EXHIBIT B-7**) we advised that our work on the project was expected to be delayed over one year and that the scope of our work continued to be cardinally changed by nonstop design revisions. For this reason, we once again advised that Stromberg was fully reserving all rights with regard to impact and delay on the project.

Despite our letter, the changes did not stop. By letter dated December 29, 2000 (**EXHIBIT B-8**), again we expressed concern about the fact that changes were impacting and delaying the completion of the project. Direction to perform continuing change work, however, did not cease. Moreover, by letter of April 30, 2001 (**EXHIBIT B-9**) Stromberg advised of numerous areas where our contract work could not be completed as a result of other work activities not yet performed. In

Bell/BCI
December 19, 2001
Page 4

this regard, we understand these other work activities may have also been impacted by change work.

For Stromberg, the performance of change work on the project continued right up through September of 2001. Moreover, the more recent change work often required demolition and reinstallation of contract and change work that had previously been performed. While change work is not uncommon, generally, it does not amount to more than 10% of our original contract amount. On this project, however, the extraordinary and excessive changes have amounted to nearly 65% of our original contract amount.

The Mechanical Contractor's Association study on impacts to labor productivity, included in **EXHIBIT B-10,** is the MCA publication PD 2, "Factors Affecting Labor Productivity." As recognized in this study, excessive, continuing and/or multiple contract changes creates impact stemming from, among other things, loss of morale and attitude, reassignment of manpower, concurrent operations, dissolution of supervision and ripple affect. All of these factors contributed to the impact of Stromberg's labor productivity on the project.

For purposes of this claim submission, however, Stromberg has analyzed its total labor hours expended on the project, the labor hours expended on change work and the labor hours originally contemplated to perform our base contract work. In doing so, we have calculated a labor hour overrun on the project of more than 19,000 manhours. Of this amount, we have conservatively attributed 17,169 labor hours to be the result of impacts to our field labor productivity for which believe we are entitled to additional compensation. A complete itemization of these claimed additional costs is included in **EXHIBIT A-3**.

In as much as Stromberg has been required to finance not only the cost of change work but also the extraordinary additional costs stemming from impact and delay, we trust this claim will be promptly resolved with an equitable adjustment to our subcontract. We also trust Bell will keep us fully informed as to the status of this claim and the extent to which this claim is submitted to the Owner.

I trust you understand our position.

Very truly yours,

STROMBERG SHEET METAL WORKS, INC.

Richard B. Freeman
Vice President

Enclosures

Bell/BCI
December 19, 2001
Page 5

cc:    Mr. Robert B. Gawne (w/encs.)
       Charlie Lee, Esquire (w/encs.)
       St. Paul Fire and Marine Insurance Company (w/encs.)
       Mr. Paul Stynchcomb (w/encs.)
       Roger C. Jones, Esquire (w/encs.)