UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| *for the use and benefit of* ) | |
| STROMBERG METAL WORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. L 02 CV 3188 |
| ) | |
| BELL BCI COMPANY, et al. ) | |
| ) | |
| Defendants. ) | |

**REPLY TO BELL BCI'S OPPOSITION TO MOTION TO
REOPEN CASE AND LIFT STAY**

Plaintiff, Stromberg Metal Works, Inc. ("Stromberg"), by undersigned counsel, files this Reply to Bell BCI's Opposition to Motion to Reopen Case and Lift Stay and states as follows:

**INTRODUCTION**

Stromberg's Motion to Reopen Case and Lift Stay ("Stromberg's Motion") seeks to have this case reopened and the agreed upon stay lifted based on the following: (1) Bell breached the partial settlement agreement by failing to pursue Stromberg's extended general conditions cost claim against the government; (2) Bell misled Stromberg into agreeing to execute the partial settlement agreement because Bell never intended to pursue Stromberg's extended overhead claim against the government; (3) pursuant to the prevention doctrine, Bell has prevented the condition for reopening this case from occurring and therefore the condition for reopening this case is waived or excused; and (4) Bell is responsible to pay Stromberg's extended field overhead costs.

In its Opposition, Bell opposes Stromberg's Motion based on its allegations that: (1) Stromberg's lawyers eliminated Stromberg's extended field overhead claim in its Amended

Expert Report; (2) in the alternative, Bell had the contractual right to prevent Stromberg's extended field overhead claim from being presented in the Court of Federal Claims Litigation; and (3) Stromberg's extended overhead claim is barred by Stromberg's Subcontract. Bell is incorrect as explained herein.

I.   **Bell Removed Stromberg's Extended Field Overhead Claim from the Court of Federal Claims Litigation**

Bell asserts Stromberg's counsel removed Stromberg's extended field overhead claim from the case. Bell's sole basis for this assertion is a one line reference from Stromberg's Amended Expert Report dated June 1, 2007. A copy of the Amended Expert Report is attached hereto as **Exhibit 1**. The Amended Expert Report states: "counsel requested we remove the section pertaining to Extended Field Overhead since this issue was eliminated at this time." There is a very good reason why Stromberg's expert wrote this in his Amended Expert Report. That reason is Bell removed the claim from the case in its Cross-Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Partial Summary Judgment ("Bell's Motion") which it filed in the Court of Federal Claims litigation.

The operative facts on this issue as set forth in Stromberg's Motion are as follows:

On October 2, 2000, Bell and the Government had entered into Mod 93 in the amount of $2,296,963. This modification extended the contract completion date to April 15, 2001 and provided Bell a "full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000." Mod 93 also states "[t]his agreement does not in any way affect entitlement to the direct cost of performance of any disputed changes. It does, however, incorporate the time impact of any disputed changes issued on or before August 31, 2000." As such, Mod 93 compensated Bell for delays through the new contract completion date of April 15, 2001.

2

On July 15, 2005 (nearly two years before Stromberg's Amended Expert Report was drafted), Bell filed its Motion in the Court of Federal Claims litigation.  A copy of Bell's Motion was attached to Stromberg's Motion to Reopen Case as **EXHIBIT 9**.  In Bell's Motion in the Court of Federal Claims Litigation, Bell stated the following (emphasis added) (Bell's Motion at pp. 5 and 12, fn. 1):

> Mod. 93 did not include any payment for labor inefficiencies or cumulative impact.  Rather, the provisions of **Mod. 93**, reflecting the negotiations preceding it, **provided only compensation for direct costs of the work and delay (i.e., extended performance duration)**, not labor inefficiencies nor the cumulative impacts of changes issued prior to it.
>
> * * * *
>
> **Bell wants to make clear that in this litigation it is not asserting a claim for the delay for the changes covered in Mods. 93-140**.  Rather, with respect to Mods. 93-140, BELL is seeking recovery based on their contribution to the overall labor inefficiency and cumulative impact that BELL suffered.  **BELL's claim for a time extension in this litigation**, which is not the subject of the cross-motions, **is based on the modifications for which it indisputably reserved its right to maintain claims based on delay, and not on Mods. 93-140**.

As Bell knew from the discovery in this case, Stromberg's delay claim for extended field overhead costs relates to delays between June 29, 2000 and April 30, 2001.  Because Mod 93 compensated Bell for delays occurring prior to April 30, 2001, Bell's statements in its Motion in the Court of Federal Claims Litigation revealed that Bell was not going to pursue Stromberg's extended field overhead claim in that case.

Based on these facts alone, Bell took Stromberg's extended field overhead claim out of the Court of Federal Claims Litigation even before the case went to trial and nearly two years before Stromberg's expert drafted his Amended Expert Report.  Based on its agreement with the Government in Mod 93, Bell had to pursue this course of action or risk making a false claim to the Government.  The problem with this course of action for purposes of this case is that it

breached the Partial Settlement Agreement with Stromberg and prevented a condition from occurring in both the Partial Settlement Agreement and in Stromberg's Subcontract.

**II.    Bell did not have the contractual right to remove Stromberg's extended field overhead claim from the Court of Federal Claims Litigation and its removal of the claim from the Court of Federal Claims Litigation constitutes a breach of the Partial Settlement Agreement**

Bell's assertion that it had the contractual right to prevent Stromberg's extended field overhead claim from being pursued in the Court of Federal Claims Litigation is wrong. The operative facts as set forth in Stromberg's Motion regarding this issue are as follows:

The Partial Settlement Agreement stated the following in part:

1. … The only damages claim remaining in the above-referenced action against Bell and USF&G is Stromberg's claim for $1,228,799, based on alleged extended field overhead and impact delay (hereinafter "delay claim").

2. Stromberg will stay its delay claim against BELL and USF&G until the final conclusion of the Court of Federal Claims litigation. Thus, the above-referenced action will be stayed in its entirety until the final conclusion of the Court of Federal Claims litigation.

3. … BELL shall retain full control and discretion with regard to the prosecution and resolution of Stromberg's delay claim.

4. BELL will ask the Court of Federal Claims to make separate findings regarding Stromberg's delay claim. Subject to ¶ 5 below, Stromberg will accept the Court of Federal Claims findings and damages award, if any.

5. In the event that the Court of Federal Claims determines that BELL did something to prejudice Stromberg's delay claim, … then Stromberg may, after the final conclusion of the Court of Federal Claims litigation, move to lift the stay in the above-referenced action and proceed on its delay claim.…

The language of the Partial Settlement Agreement clearly indicates that Stromberg's remaining claims are (1) the extended field overhead claim and (2) the impact claim. Both claims are collectively referred to in the Agreement as the "delay claim." Stromberg agreed to

4

stay this case pursuant to the terms of the Agreement. Bell agreed to ask the Court of Federal Claims to make a specific finding regarding Stromberg's delay claim. Obviously, the agreement to ask the Court to make a specific finding regarding Stromberg's delay claim presumes the claim will be presented to the Court, otherwise the Court could not make such a "specific finding."

Bell says it fulfilled this obligation when it presented Stromberg's impact claim and asked the Court of Federal Claims to make a specific finding regarding Stromberg's impact claim. Stromberg's "delay claim," as defined in the Agreement, however, includes both the extended field overhead claim and the impact claim. As such, Bell did not fulfill its obligation to present Stromberg's entire delay claim and to ask the Court for a specific finding regarding the claim. Bell's removal of Stromberg's extended field overhead claim from the Court of Federal Claims Litigation constitutes a breach of the Partial Settlement Agreement.

Bell makes much of the provision in the Partial Settlement Agreement that it retained full control and discretion with regard to the prosecution and resolution of Stromberg's "delay claim." That provision, however, did not give Bell the ability to fail to pursue the two claims defined in the Agreement as the delay claim. While Bell was permitted, under this provision, to decide all matters with respect to how the claim was presented at trial and whether to the settle the claim with the Government (if such actions were in good faith), Bell was not permitted to entirely fail to pursue the claim. As such, the case law cited by Bell standing for the proposition that there is no prevention when the contract authorizes a party to prevent a condition from occurring is inapplicable.

If Bell could decide not to present the claim at all under the Agreement, such a decision would thwart the purpose of nearly every clause in the Partial Settlement Agreement. Why

5

would Stromberg agree to stay this case if Bell could "decide" not to present Stromberg's claim? How could the Court make a specific finding regarding Stromberg's claim if Bell could "decide" not to pursue Stromberg's claim. How could the Court determine whether Bell did something to prejudice Stromberg's claim if Bell could "decide" not to pursue Stromberg's claim? Every clause in the Partial Settlement Agreement depends on Bell pursuing the "delay" claim.

One of cases cited by Bell is instructive on these issues. In *Shear v. National Rife Association*, 606 F.2d 1251 (C.A.D.C. 1979), Shear, a real estate agent who had arranged to sell the Washington headquarters of the NRA and who was to be paid a commission when the sale was fully consummated, filed suit against the NRA claiming the NRA had breached its contract with Shear by preventing a condition from occurring in the contract. *Id*. at 1253-54. The NRA claimed Shear had assumed the risk of the prevention. *Id*. at 1256. The Court agreed with Shear and held Shear did not assume the risk of the prevention that occurred. In making this holding, the Court stated:

> Shear's complaint alleges that the NRA failed to honor two promises. First, the Management Committee was required to recommend that the Board adopt the sale contract procured by Shear. Second, the contract was to be submitted to the Board for approval. In light of these two promises, the risk assumed by Shear was that the Board, with authority to consider the contract, would withhold approval despite the unanimous recommendation of the Management Committee.
>
> The Complaint alleges that the NRA did not honor either of its promises. It asserts that the Management Committee failed to recommend approval of the contract, and that the contract was not submitted to the Board until the Board was stripped of its authority to approve the contract. Shear did not assume the risk that the Management Committee would refuse to recommend the contract, or that the Board would be deprived by a subsequently enacted by-law of authority to approve the contract. Since these risks were not assumed by Shear, the NRA's alleged conduct was unauthorized prevention.

Like in *Shear*, Bell undertook certain promises that it failed to fulfill which prevented conditions under the contract from occurring. Bell failed to pursue Stromberg's extended field

6

overhead claim and failed to ask the Court to make a specific finding on the claim. Bell's actions in taking Stromberg's extended field overhead claim out of the Court of Federal Claims Litigation was unauthorized prevention. Not only could Stromberg not recover anything from the Government on the claim, but the Court could not rule that Bell had prejudiced Stromberg's claim. Stromberg did not assume the risk that Bell would take the claim out of the Court of Federal Claims Litigation simply because it gave Bell control over the prosecution and potential settlement of the claim. Bell's ability to control the prosecution and settlement of the claim assumes that the claim will at least be pursued.

**III.     It is not relevant to this case when Stromberg became aware of Mod 93**

Based on Exhibits 9, 10, and 11 of Bell's Opposition, it is clear Stromberg was aware Bell and the Government had entered into Contract Modification No. 093 ("Mod 93") in the amount of $2,296,963 <u>before</u> Stromberg filed its Complaint on September 20, 2002. Stromberg's original assertion that it learned of Mod 93 after it filed suit was in error. Whether or not Stromberg knew of Mod 93 before it filed its Complaint or after <u>is irrelevant to the issues presented in Stromberg's Motion</u>. The more relevant fact is that prior to Mod 93's execution by the Government and Bell, Stromberg was never informed of nor included in the negotiation of the delay settlement and Stromberg thus had no input into this settlement, no opportunity to update its claim, and no opportunity to express approval or disapproval over the settlement sum.

**IV.     It is not relevant to this case whether Bell permitted Stromberg's counsel to participate in the trial of the Court of Federal Claims Litigation**

Bell claims Stromberg's assertion that Bell would not permit Stromberg's attorney to participate at the trial of the Court of Federal Claims Litigation is false. It should be noted Stromberg does not rely on this fact with respect to its Motion to Reopen Case because, per the Partial Settlement Agreement, Bell retained control over the presentation of Stromberg's claim.

7

As such, Bell was well within its rights under the Partial Settlement Agreement to use its own counsel to present Stromberg' claim.  Nevertheless, Bell's assertion that Stromberg's lawyers requested Bell to present Stromberg's claim is not correct.  Instead, the correct facts on this issue are as follows:

The original trial date was in February 2007.  That trial date was changed to August 2007.  Stromberg's counsel was not consulted with regard to the trial dates.  When the trial was scheduled for August 2007, Stromberg's counsel requested Bell to change the trial date due to scheduling conflicts.  Bell did not pursue a change of the trial date at that time.  Stromberg's counsel sent an email to counsel for Bell regarding these issues.  A copy of the email is attached hereto as **Exhibit 2**.  The email (1) explains the scheduling conflict, (2) requests a trial date change, (3) inquires who will be presenting Stromberg's evidence at trial given Stromberg's counsel's inability to attend the trial as scheduled, (4) sets forth information regarding Stromberg's two claims – *i.e.*, the extended field overhead claim and the impact claim, and (5) inquires what portion of Stromberg's claim Bell could/would present given its position in the case on Mod 93.  After Bell did not seek a new trial date, it informed Stromberg (via Stromberg's counsel) that Bell would be presenting Stromberg's claim at the Court of Federal Claims Litigation.[1]

Later, the trial date was rescheduled to October 15, 2007.  See email attached hereto as **Exhibit 3** regarding the change in trial date.  At the time the trial date was changed, Stromberg was already preparing for trial with one of Bell's lawyers designated as its trial counsel.  After the trial postponement, Stromberg's counsel inquired regarding whether he could present the claim.  That request was rejected.

---

[1] The exhibit Bell cites on this issue (Bell's Exhibit 14) is misleading because it relates to the presentation of another subcontractor's claim and was drafted after the email attached hereto as Exhibit 2 and after Bell decided it was going to present Stromberg's claim.

8

Again, these facts are not relevant to the determination of Stromberg's Motion because Bell was within its contractual right under the Partial Settlement Agreement to decide its counsel would present Stromberg's claim.

**V.     Bell has failed to refute the allegation that it never intended to pursue Stromberg's extended field overhead claim in the period of time after it agreed to pursue the claim in the Court of Federal Claims Litigation in the Partial Settlement Agreement**

Bell argues it did not fraudulently induce Stromberg into entering the Partial Settlement Agreement. Bell bases this argument on its assertion that it prosecuted Stromberg's extended field overhead claim well after it entered into the Partial Settlement Agreement and until Stromberg's lawyers eliminated the claim in the Amended Expert Report. See p. 19 of Bell's Opposition. Bell claims it prosecuted the claim by the following actions, each of which occurred on the following dates: (1) on April 5, 2002, Bell passed on Stromberg's claim to the Government; (2) on June 3, 2003, Bell filed suit against the Government appealing the Contracting Officer's denial of Bell's claim, which included Stromberg's claim; and (3) on December 1, 2003, Bell served the Government with Stromberg's Initial Expert Report. The Partial Settlement Agreement was executed on January 22, 2004.

Each of the facts Bell points to as allegedly supporting its allegation that it pursued Stromberg's extended field overhead claim occurred before the Partial Settlement Agreement was entered into. The penultimate fact is Bell did nothing to prosecute Stromberg's extended field overhead claim after the Partial Settlement Agreement was entered into. Instead, nearly two years before Stromberg's expert report was amended, Bell took the claim out of the case through its statements in its Motion in the Court of Federal Claims Litigation, in connection with the partial summary judgment arguments. Bell can not deny this fact and, in its Opposition in

9

this case, avoided reference to the statements it made in its Motion in the Court of Federal Claims Litigation.

Bell cites *Alleco, Inc. v. The Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 196-97, 665 A.2d 1038, 1048 (Md. 1995) for the proposition that Stromberg cannot base its fraudulent inducement claim on an alleged breach of contract. That is not the basis of Stromberg's claim. Rather, Stromberg's claim is based on another proposition in *Alleco*, which Bell cites and tries to refute applies to the facts of this case (based on the facts discussed in the preceding paragraph herein). The applicable proposition in *Alleco* is that a "deliberate misrepresentation of . . . existing intentions . . . may form the basis for an action in fraud or deceit." The facts supporting the fraudulent inducement allegation as set forth in Stromberg's Motion are as follows:

In Bell's Response to Request for Admission No. 2 in Bell's Response to Stromberg's First Request for Admissions (a copy of Bell's Response to Stromberg's First Request For Admissions was attached to Stromberg's Motion as **EXHIBIT 3**), Bell denied Mod 93 "settled with the Government Stromberg's claims for all delays resulting from any and all Government changes transmitted to Bell on or before August 31, 2000." In Bell's Response to Request for Admission No. 7, Bell also denied it expressly released the Government from all delays resulting from any and all Government changes transmitted to Bell on or before August 31, 2000 by executing Mod 93.

Induced by these discovery responses and Bell's assertion that it would seek recovery of Stromberg's extended field overhead claim in the Court of Federal Claims Litigation, Stromberg entered into the Partial Settlement Agreement.

Then, in contrast to Bell's position in this case, Bell took a completely contrary position in the Court of Federal Claims Litigation in Bell's Motion in that case when it expressly stated: "Mod. 93 . . . provided only compensation for direct costs of the work and delay (i.e., extended performance duration). . . . Bell wants to make clear that in this litigation it is not asserting a claim for the delay for the changes covered in Mods. 93-140.  BELL's claim for a time extension in this litigation . . . is based on the modifications for which it indisputably reserved its right to maintain claims based on delay, and not on Mods. 93-140."

Based on Bell's complete turn around in its position on the effect of Mod 93, Bell induced Stromberg into entering the Partial Settlement Agreement by misrepresenting its own understanding of what it was compensated for in Mod 93, what delays Mod 93 released, and its intention to pursue delay damages, such as Stromberg's, in the Court of Federal Claims Litigation.  Bell would like this Court to believe it thought one thing when it entered into the Mod 93 settlement, thought something completely different when it entered into the Partial Settlement Agreement, and then remembered once again what had happened in the Mod 93 settlement when it wrote its Motion in the Court of Federal Claims Litigation.

## VI. Stromberg's Delay Claim was not untimely

Bell claims Stromberg's delay claim is untimely under its Subcontract.  Stromberg provided numerous claim notices, with the information it was able to provide at the time, when it discovered it would be delayed.  Thereafter, Stromberg provided additional claim submissions.  A copy of Stromberg's December 19, 2001 Final Claim submission, with attached other claim notices, is attached hereto as **Exhibit 4**. Stromberg was hampered in providing final claim submissions earlier in time because it was not provided with the construction schedules for the

project by Bell and it was not clear when the work would be complete and thus the duration of the delay. As such, Stromberg's delay claim was not untimely.

## VII.  Stromberg has not released its delay claim

Bell claims Stromberg released its delay claims based on Exhibit 8 to Bell's Opposition. The release attached to Bell's Opposition as Exhibit 8 did not release Stromberg's delay claim for a number of reasons. For example, Stromberg received no consideration for the release of Stromberg's delay claim in that release. Further, the release is ambiguous because it states Stromberg "received the sum of $5,027,578.88, which sum represents the total amount paid, including the current payment, for work done and materials supplied under the undersigned's contract for project NIH Bldg. 50 through 7/31/00." However, at that time there were other amounts owed, such as retainage. Bell certainly did not claim that retainage was not owed for work performed prior to this date even though presumably if the release released all claims in exchange for the amount paid, then any claim for retainage would also be released. As such, the release is ambiguous and parol evidence regarding exactly what claims were released based on the payment received is admissible. Stromberg did not intend to release its delay claim when it executed this release.

## CONCLUSION

Based on the foregoing and the points and authorities in Stromberg's Memorandum in Support of Motion to Reopen Case and Lift Stay, the Court should grant Stromberg's Motion to Reopen this Case and Lift the Stay for the sole purpose of adjudicating Stromberg's claim for extended field overhead costs.

Respectfully submitted

\s\ *Nicole L. Campbell*
Nicole Lefcourt Campbell, Bar No. 14425
Huddles Jones Sorteberg & Dachille, P.C.
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
Telephone (301) 621-4120
Facsimile (301) 621-4473
Email: campbell@hjpc.com
Counsel for Plaintiff

Dated:  September 5, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the  5th  day of September, 2008, a copy of the foregoing Reply to Bell BCI's Opposition to Motion to Reopen Case and Lift Stay was mailed, postage prepaid, to:

Richard O. Wolf, Esquire
Moore & Lee, LLP
1750 Tysons Boulevard, Suite 1450
McLean, Virginia 22102
r.wolf@mooreandlee.com

\s\ Nicole Lefcourt Campbell